Bozarth et vir, Appellants, *v.* Penn Fruit Company et al.

218

Argued March 26, 1958. Before RHODES, P. J., GUN-
THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(HIRT, J., absent).

Before CRUMLISH,
J.

*Mary Alice Duffy,* with her *Gerber & Galfand,* for appellants.

*Norman R. Bradley,* with him *Ralph S. Croskey,* for appellees.

OPINION BY WATKINS, J., September 11, 1958:

This is an action in trespass for injuries suffered by Etta Bozarth, the wife appellant, in a fall on a defective pavement and by Alexander Bozarth, the husband appellant, for loss of consortium. The injuries were sustained on August 14, 1954 on the North side of Lehigh Avenue between 21st and 22nd Streets in Philadelphia. The case was tried before the late Judge CRUMLISH and the jury returned a verdict for the appellant wife in the amount of Thirty-five Hundred ($3500) Dollars and for the appellant husband in the amount of Four Hundred Fifty ($450) Dollars. A motion for a new trial was granted the appellee by the court below, "for the unequivocal development of facts and their submission to the jury under proper instructions." Hence this appeal.

The defendants in this case were Penn Fruit Company, occupying the first floor of the building fronting the pavement, and G. L. P. Company, the owner of the land and property where the appellant fell. On motion of the defendant, Penn Fruit Company, a compulsory non-suit was granted on the ground that the primary responsibility for the maintenance of a multiple ten-

ancy rests with the owner. The appellants do not complain of this ruling.

A careful examination of the record would warrant a jury in finding the following facts: On Saturday, August 14, 1954 the Phillies were playing the Pittsburgh Pirates in the Connie Mack stadium, which is located at 21st and Lehigh Ave., Philadelphia, Pennsylvania; that the appellant wife is a scrub woman, age 46, and was employed part time as a counter woman at the baseball park; that she had been so employed for 3 years; that the game was over at about 4:15 to 4:30 in the afternoon; that the appellant left with the crowd after the game; that she was walking with the crowd on the pavement on the North side of Lehigh Avenue, between 21st and 22nd Streets in front of the appellee's property outside the Penn Fruit store; that she had knowledge that there were holes in the pavement; that the appellee had notice of the condition of the pavement; that because of the crowd and the condition of the pavement she attempted to watch both the pavement and the people to avoid jostling them or being jostled; that she saw a large hole and sidestepped it and then her foot came into a smaller L-shaped hole, which she was unable to see because of the people in front of her, and which caused her fall and injuries.

Judge SLOANE in his opinion setting forth the reasons for granting a new trial, cited *Cooper v. Philadelphia*, 178 Pa. Superior Ct. 205. In that case, Judge HIRT, at page 210 said: "In this case the majority of us are of the opinion that a new trial well might have been granted in the court below for an unequivocal development of the facts and their submission under proper instructions." We cannot agree that the Cooper case applies to the facts in the instant case and believe that any inconsistencies could well have been

reconciled by the jury under the able charge of the late Judge CRUMLISH.

The Cooper case involved an accident caused by a defect in the roadway at an intersectional pedestrian crosswalk. The testimony disclosed, however, that although the plaintiff contended she fell because of a defect in the crosswalk which she did not see because of people crossing the street with her, she also testified on cross-examination that because she was in a hurry to cross the street she turned away from the people and crossed diagonally so that the defect she stepped into was not at the crosswalk where the people were crossing but was west of the crosswalk and between street intersections. It was this patent factual contradiction that caused the court to direct the granting of a new trial. Here, the wife testified directly that there was a crowd, that people were in front, in back and to both sides of her. She put it this way, "You know how it is when you come out of a movie, there is people all around you, in front of you, in back of you." The jury was certainly justified in inferring there was a crowd at this location immediately after a ball game. She testified that she left with the crowd and that the crowd was her explanation as to why she failed to see the second hole. She was walking on a sidewalk for pedestrians in attempting to get to the Penn Fruit store to do some shopping.

The court below based its ruling on alleged confusions and contradictions brought out by the cross-examination of the appellant. This cross-examination emphasized two written statements, alleged to have been made by the appellant prior to trial. The first statement was prepared by the appellee's insurance adjuster and signed by the appellant and in this statement she twice referred to the presence of people in front and behind her. The second statement, a letter

written by the appellant to the appellee's agent did not mention the crowd at all. She did, however, state in that writing that the game was over at about 4:30 in the afternoon and she left the ball park at about 4:30. It certainly is not a contradiction that there was a crowd or that she failed to see the defect for that reason, because in this writing she did not mention it. Her failure to mention it might certainly have been taken into consideration by the jury as a matter of credibility. She said in reference to this letter, "I guess it did not occur to me to mention a crowd . . .". And it might be added, having already stated that she failed to see the hole because of the crowd to the insurance adjuster in the first writing, she might have felt that was sufficient. Her direct testimony was positive.

The cross-examination also brought out some confused testimony as to the distances between the people alleged to have been in front of and behind her. It does seem harsh to penalize this scrub woman for failing to set forth in a letter the legal requirements of liability which continue to trouble counsel and the courts when under oath, at the trial of the case, she definitely fixes the crowd as the reason for her failure to see the second hole. And certainly it was not the intention of the court below to grant a new trial because of the confusion of the witness by a clever cross-examiner.

It is always the jury's function, under proper instructions, to reconcile discrepancies and inconsistencies in testimony, if possible, and we feel the charge of the late Judge CRUMLISH fairly guided the jury when he stated, "There is a recent pronouncement of the Superior Court on this subject which I think is informative, and I will make it a part of my instructions because the facts are quite similar to those of the case before you.

"A pedestrian who is injured on a clear, dry day because of an obvious defect in a sidewalk is presumptively negligent, and the burden is upon him to show conditions outside of himself which prevented him from seeing the defect and which excused his failure to observe it.

"Defects in sidewalks, curbs and cartways are so common that it is the duty of the pedestrian to be observant, and the mere fact that others are on the sidewalk, in itself, does not absolve one from the penalty of contributory negligence for failure to observe what could have been seen by exercise of ordinary care." We do not see how it would be possible to improve, from the defendant's viewpoint, this instruction to the jury as to the law in this case.

The testimony of the appellant here absolved her from the charge of contributory negligence if the jury believes that she failed to see the hole because of the crowded condition of the pavement. "When a pedestrian crosses a street with traffic at the 'rush hour' of the afternoon, as this elderly woman did, and the crowd traveling with her is so dense that she could touch the pedestrian in front of her, it cannot be said that her negligence is so obvious as to be declarable as a matter of law. This is not one of those cases in which plaintiff steps into a hole and shows no external conditions which prevented her from seeing it. The external condition here was the 'rush hour' crowd of pedestrians of which she was a part. Plaintiff testified, 'We were a group waiting, and when the signal went on we all started over together.' This presents a factual situation different from that where a pedestrian is alone and has an opportunity for a leisurely observation of the path he is taking." *Hardiman v. Pittsburgh Rys. Co.*, 339 Pa. 79, at page 82, 14 A. 2d 72 (1940). See also: *Casey v. Singer*, 372 Pa. 284, 93 A. 2d 470

(1953); *Becker v. Philadelphia,* 212 Pa. 379, 61 A. 942 (1905).

"Where the reason assigned for the grant of a new trial involves the exercise of discretion, ordinarily the order of the trial court will not be interfered with, in the absence of palpable abuse of power . . . While this Court usually supports the action of the trial court in granting or refusing a new trial we do not entirely abdicate our reviewing function in such cases. This Court, too, has the duty to determine from the record whether or not the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative so that right may be given another opportunity to prevail." *City Prod. Corp. v. Bennett Bros.,* 390 Pa. 398, 135 A. 2d 924 (1957). In this case the Supreme Court held that the appellate court was obliged to examine the entire record to determine whether any valid reason exists for disturbing the jury's verdict; and where no such reason is found, the order granting a new trial will be reversed.

This record discloses an issue purely of fact that was for the jury alone to determine. If the cross-examination weakened the testimony of the appellant it was for the jury to give that testimony its proper weight and test her credibility. We certainly cannot say in the face of this record that the finding of the jury was capricious; but that it was supportable by the evidence and should be upheld. As has been said many times, even if this Court or the court below might have found differently is not sufficient for disregarding the jury's action. If the evidence is conflicting or although not contradictory, is open to two or more reasonable inferences as to what actually took place, the case must be left to the jury: Restatement of the Law, Torts, Section 434.

From an examination of this record we conclude that the action of the court below in awarding a new trial must be held to be an abuse of its discretion.

Order granting a new trial reversed; judgment entered for the appellant.