## Puskarich, Appellant, v. Trustees of Zembo Temple.

Argued May 28, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*John H. Bream,* for appellant.

*Huette F. Dowling,* with him *Dowling and Dowling,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 10, 1963:
On the evening of January 20, 1959, at approximately 11:15 p.m., Tony Puskarich, when leaving Zembo Temple, after attending a public function, fell and was seriously injured. He was walking on a sidewalk on the grounds surrounding Zembo Temple. He was en route to an automobile in the Zembo Temple parking lot. He alleges in his complaint that he proceeded down a flight of four steps and stepped on a slippery spot of ice, undulating and uneven in texture, with ridges and holes, sloppy with water and covering an irregular crumbling and broken portion of the sidewalk beneath.

The trial judge, at the conclusion of plaintiff's case on liability, entered a judgment of compulsory nonsuit. Plaintiff's motion to take off the nonsuit was denied by the court en banc and plaintiff appeals.

The action of the court: (1) in excluding certain photographs offered by the plaintiff; (2) in permitting defendant's counsel to quote from a deposition to at-

tack the credibility of plaintiff's witness; (3) in refusing to permit any testimony from the wife of the plaintiff; (4) refusing to permit defendant's maintenance superintendent to be called as on cross-examination and (5) entering a compulsory nonsuit are assigned by appellant as error.

In considering this appeal from the judgment of compulsory nonsuit, we read the record in the light most favorable to the plaintiff, *Davies v. McDowell National Bank*, 407 Pa. 209, 180 A. 2d 21 (1962). So reading, we find that during the day and the evening of January 20, there was freezing rain, sleet and snow. The two days previous, there was freezing weather and no precipitation. The plaintiff was preceded by two friends with whom he was in company and there were many people walking on the sidewalk ahead of them. A friend of the plaintiff, Mr. Tarr, testified: "Well, I couldn't say whether I had taken three or four or five steps, but it was a very short time after we had reached the bottom of the steps there that you could feel with your feet that there was some sort of ice or something on it. We sort of slowed up." He then turned and saw the plaintiff fall. Continuing to describe the condition, Mr. Tarr said: "Well, it felt when we got to the bottom of the steps, you could feel that in that first few feet from the steps that there were—seemed to be ridges and like holes which were very sloppy—they were holding water. I also noticed that when I knelt down beside Mr. Puskarich after he fell." Mr. Carnicelli, a friend called as a witness, testified: "It was rough, it was icy, and the footing was very bad. Kiddingly I told—I was slipping and what not, and I told Mr. Puskarich just kiddingly, I said, 'Watch that you don't fall, you might put a hole in the concrete,' because he was a big man." He then saw Mr. Puskarich fall as he turned around to him. Mr. Puskarich described his fall as: "Only thing I remember I stepped

some ice or some stuff. Only thing I remember." Walter Mehaffie, assistant superintendent of Zembo Temple, was called as a witness by the plaintiff and testified: "Q. Prior to January 20, 1959, had you had any difficulty with water drainage and seepage and cracked concrete in that area? A. Not to my knowledge. Q. Not to your knowledge? A. Not cracked concrete, no. Q. What condition of the concrete? A. You asked cracked concrete and I said not to my knowledge. Q. What was the condition? A. The only condition I ever noticed there was that the surface, the top surface of the concrete had become broken, and from time to time we replaced it."

Appellant contends the trial judge erred in excluding certain photographs from evidence. Counsel agreed to the introduction of three photographs showing the sidewalk, which had been taken at a distance great enough to show the area of the sidewalk involved but not close enough for any detailed observation. The excluded photographs consist of two groups. One group of eleven pictures taken shortly after May 5, 1959, which showed a surface crumbling. The other group consisted of three photographs, taken January 27, 1962, which showed a new surface on that portion of the sidewalk referred to and shown by the other rejected pictures. None of the pictures showed the condition as it existed on the night of January 20, 1959. The appellant's contention is that these photographs, disclosing the sidewalk's surface to be irregular and crumbling in the area in which he fell, were proper exhibits from which the appellant and his witnesses could have established the continuing disintegration of the sidewalk surface and, of course, the photographs taken in January, 1962, showed repairs having been made to the area where the accident occurred. Appellant urges that with the proper instructions to the jury the excluded photographs were properly admissi-

ble, relying on the authority of *Nyce v. Muffley*, 384 Pa. 107, 119 A. 2d 530 (1956). There, Mr. Justice (now Chief Justice) BELL said, at page 111: "Plaintiff contends that the Court erred by admitting photographs of the 7th and Cedar Streets intersection when they were taken two years after the accident and in the daytime. The Court admitted the photographs with this clear and specific limitation: 'The exhibits will be received solely for the purpose of showing the permanent physical aspects at the intersection of 7th and Cedar and for no other purpose. The jury will understand that when these pictures get into your hands you will understand that they are here for the sole purpose of showing the permanent conditions at that corner. The streets seem to be wet in these pictures . . . and the evidence shows that that condition did not exist on January 19, 1951, and of course these pictures cannot show the visibility on January 19, 1951. They can show geometrically perhaps what could be seen, but not actually what was visible on account of the light at that particular time; for that limited purpose the exhibits will be received.'

"The admission of photographs is a matter largely within the discretion of the trial Judge. A photograph must be verified either by the testimony of the person who took it or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury: Taylor v. Modena Borough, 370 Pa. 100, 87 A. 2d 195; Beardslee v. Columbia Township, 188 Pa. 496, 41 A. 617.

"The admission into evidence of photographs showing the location and scene of a crime for the limited purpose of showing the general location and the struc-

tures is a matter within the sound discretion of the trial Court even though the photographs were made in the daytime and the crime was committed after dark: Commonwealth v. Gidaro, 363 Pa. 472, 70 A. 2d 359."

The trial judge, in accordance with the foregoing authority did exercise proper discretion in receiving in evidence photographs which showed the sidewalk from three different perspectives, which depicted the general area as well as the place of the accident. The rejected photographs, one set taken three and a half months after the accident, and the others three years after the accident, could not aid, but would only confuse in the determination of the issue of the condition of the sidewalk on January 20, 1959.

Appellant, in arguing the admissibility of the disputed photographs, essentially wishes to prove, by pictures taken three and one-half months later, without snow, sleet, ice or water, and pictures taken three years later, showing a repaired surface, that a condition of disintegration existed at the time of the accident. Under the circumstances it would have been prejudicial and error for the trial judge to have admitted the rejected photographs.

The trial judge permitted the cross-examination of a witness whose testimony appeared to be at variance with a prior deposition. He did so in accordance with Pennsylvania Rules of Civil Procedure 4020(a)(1). The trial judge, in the conduct of the trial, must determine whether the testimony of a witness given at trial is at variance with a former deposition and we will not interfere with that determination in the absence of clear abuse of discretion or error of law. A trial judge must be granted wide latitude in the conduct of a trial. The trial judge's action in permitting the cross-examination of the witness in the instant matter was entirely proper.

Appellant complains of the trial judge's refusal to permit the wife of plaintiff, who visited the scene of the accident several days after the occurrence, to testify for the purpose of describing her impression of the condition of the pavement. There was no indication that the conditions existing several days later were the same that existed on the night of the accident and in the absence of such evidence it would be improper to permit this type of testimony. The trial judge ruled correctly in this instance in denying such speculative testimony.

Plaintiff called for cross-examination, Walter Mehaffie, the assistant superintendent in charge of the building and grounds for Zembo Temple. The trial judge sustained defendant's objection, for the reason that the witness—not being adversely interested—did not come within the provisions of the Act of May 23, 1887, P. L. 158, §7, as amended by the Act of March 30, 1911, P. L. 35, §1, 28 P.S. §381. This section of the Act, as amended, was before the court in *Dinger v. Friedman*, 279 Pa. 8, 123 Atl. 641 (1924). The law is well settled and since the witness was not one within the provisions of the act, the trial court properly refused to permit him to be called for cross-examination. Plaintiff then called the witness as plaintiff's witness and interrogated him as above.

Finally, appellant complains of the entry of the judgment of compulsory nonsuit, contending that the trial judge should have submitted for the jury's determination, the question of defendant's negligence. His contention is that the evidence established that the walking surface conditions on the roadways, sidewalks, and parking areas, immediately adjacent to Zembo Temple at the time of the accident, were such as to present an issue for jury determination. There was not sufficient evidence in the instant case to submit a factual issue for the determination of a jury. The rec-

ord reveals a total lack of notice, either actual or constructive, as to the condition of the sidewalk prior to the accident. The record does reveal a fall of rain, sleet, and snow immediately prior to the night of plaintiff's injury, with the existence of cold, freezing weather and some temperature above freezing at the time of the accident. There was no testimony describing the condition existing on the sidewalk at the time in question. We said recently in *Rinaldi v. Levine,* 406 Pa. 74, 79, 176 A. 2d 623 (1962) : *"The ridge must be shown to be of such substantial size and character as to be a danger to the public, not a mere uneven surface caused by walking upon the ice. The proof must describe the alleged ridge as to size and character and be such as to support a finding that it was a substantial obstruction to travel. Plaintiff does not meet the burden of proof by showing such surface, even though a witness may refer to it as consisting of little ridges or bumps. . . .'* (Emphasis supplied). See also : Zieg v. Pittsburgh, 348 Pa. 155, 158, 34 A. 2d 511, and cases therein cited."

Other language used in that case also applies to the instant case (p. 80) : "Another serious defect in Rinaldi's case is his inability to state *what* caused him to fall. Under his own testimony either 'a piece of ice' or 'a ridge of ice' or 'something' caused him to slip and fall; if Rinaldi does not know *what* caused his fall, then only by conjecture and guesswork could a jury find *what* caused him to fall. In Sellers v. Cline, 160 Pa. Superior Ct. 85, 86, 49 A. 2d 873, it was said: 'It would appear, therefore, that in order to recover against the defendant the plaintiffs are obliged to prove not only evidence of a dangerous condition in the form of hills and ridges, but must show that the dangerous obstructions on the sidewalk were the actual cause of the fall'. See also : Zieg v. Pittsburgh, supra, p. 157; Miller v. City Ice and Fuel Co., supra,

p. 184; Hillelson v. Renner, 183 Pa. Superior Ct. 148, 130 A. 2d 212. In Hulings v. Pittsburgh, 150 Pa. Superior Ct. 338, 28 A. 2d 359, there was testimony of areas of uneven ice on the sidewalk as well as ridges which were obstructions to safe travel but the plaintiff, as Rinaldi, did not testify that she was caused to fall by a ridge or ridges of ice and, by reason thereof, a judgment n.o.v. was entered. Cf: Silberman v. Dubin, 155 Pa. Superior Ct. 3, 36 A. 2d 854, and Bowser v. Kuhn, supra, 160 Pa. Superior Ct. 31, 49 A. 2d 852, where recovery was allowed because the plaintiffs were able to establish a causal connection between the ridges of ice and the fall. Under Rinaldi's proof any finding that his fall resulted from stepping on a ridge or elevation of ice would be a mere guess and conjecture."

And again (p. 81) : "In this area of the law our decisional law has very clearly defined the quantity and quality of proof required to establish actionable negligence. Such proof was wholly lacking in the instant situation and judgment n.o.v. should have been entered."

Appellant avers that the court erred in granting the compulsory nonsuit, citing the case of *Smith v. Bell Telephone Company of Pennsylvania,* 397 Pa. 134, 153 A. 2d 477 (1959), for the proposition that the jury should make a determination of the negligence of the defendant. This case stands for no such proposition. There must be some evidence of negligence beyond the realm of mere speculation for the submission of an issue to a jury. We said (p. 138) : "We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based. Schofield v. King, 388 Pa. 132, 136, 130 A. 2d 93 (1957) ; Connor v. Hawk, 387 Pa. 480, 482, 128 A. 2d 566 (1957) ; Ebersole v.

322

Beistline, 368 Pa. 12, 16, 82 A. 2d 11 (1951). Clearly this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function. It means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached."

The entry of judgment of compulsory nonsuit was proper. Judgment affirmed.

Mr. Justice MUSMANNO dissents.