Flynn, Appellant, *v*. Chester.

Argued January 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*J. E. Lastowka,* with him *Francis A. Ferrara,* for appellant.

172

*Melvin G. Levy,* with him *McClenachan, Blumberg & Levy,* for City of Chester, appellee.

*Charles E. Rankin,* with him *Rankin & Rankin,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 15, 1968:

This is an appeal from the judgment of the Court of Common Pleas of Delaware County after a jury verdict in favor of all three defendants, the City of Chester, Anna Jones, and Dorothy Quann. After denial by the court below of plaintiff's new trial motion and entry of judgment, plaintiff appealed to this court.

Anna Jones and Dorothy Quann reside in adjoining houses, being Nos. 625 and 627 Morton Avenue, Chester, Pennsylvania, respectively. In 1944, Anna Jones replaced a brick sidewalk in front of her property with a concrete sidewalk; the City installed vents and pipes; there is no evidence that the City established the grade of the sidewalk or that it participated in the creating of the ¾ inch difference, which existed when the new concrete sidewalk was installed; the Quann sidewalk of brick was raised about ¾ of an inch to meet the grade of the concrete sidewalk.

On November 15, 1959, at about 9:00 P.M., the plaintiff and her niece were walking south on Morton Avenue, talking as they went; the plaintiff says she was looking at her niece as she talked and was not watching the sidewalk in front of her. It was dark and the sidewalk was not well lighted. Plaintiff was and is a stout, heavy person. The testimony seems to indicate that as of November 15, 1959, the brick sidewalk in front of Miss Quann's property and at the party line between the Quann and Jones property had sunk about three quarters of an inch. The plaintiff tripped over the edge of the concrete sidewalk which

she says was protruding about 1½ inches, fell and suffered injuries.

Appellant alleges three errors as requiring a new trial.

1. The trial judge should have charged that the City of Chester could be found liable, without right of recovery over from the property owners.

2. The trial judge erred in refusing to permit appellant to read into the record the deposition of Dorothy Quann.

3. The trial judge erred in preventing appellant from authenticating and entering into evidence a photograph of the scene of the accident.

We do not believe that any of these alleged errors necessitates the grant of a new trial.

It was not error for the court below to refuse to charge that the City could be found solely liable. The general rule is that the liability, if any, of a municipality for an injury due to a defective or dangerous sidewalk is only a secondary one; the primary obligation rests with the abutting property owners. In *Brady v. Philadelphia,* 156 Pa. Superior Ct. 607, 612, 41 A. 2d 355 (1945), the court said: "Recovery against the city is permitted on a theory that the city has neglected to perform its duty to require the property owner or tenant to maintain the sidewalk in a condition reasonably safe for travel. Wright v. Scranton, 128 Pa. Superior Ct. 185, 194 A. 10. Consequently, where the plaintiff is awarded a verdict against the city, the city is entitled to a verdict over against the additional defendant upon whom the ultimate burden rests. Ford v. Philadelphia, 148 Pa. Superior Ct. 195, 24 A. 2d 746." It is true that where a sidewalk defect has been created by the municipality itself, then the municipality may be found liable without liability over. However, there was insufficient evidence in the record for

a jury to find that the alleged defect had been created by the city. The only evidence connecting the city to the creation of the alleged defect was contained in the testimony of one Wesley R. Cole, son-in-law of defendant Jones, where the questioning concerned the concrete sidewalk defendant Jones had installed in 1944: "Q. Were the various attachments, like pipes, and so forth, set in this walk? A. Yes. . . . Q. But the City of Chester put in air vents and pipes? A. Yes."

From this meager evidence, no jury could properly find that the city had created the alleged defect. It is true that the trial judge did instruct the jury that the Jones' sidewalk "was built, and it is uncontradicted, under the specifications of the city, inspected by the city and approved by the city." However, the trial judge's recollection of the facts in his charge does not constitute evidence. The record simply does not support the charge on this point. However, the error was harmless since such a charge could hurt only the city, and the judge also stated that the city could not be found solely liable.

Moreover, even if there were sufficient evidence to support a finding that the alleged defect had been created by the city, it is clear that the result would not have been changed had the charge been altered. The verdict was in favor of all the defendants. One logical interpretation of this is the conclusion reached by the trial judge in his opinion, that the jury had found appellant contributorily negligent. Under this interpretation a charge that the city could be found liable without liability over would have been totally superfluous. It is also possible that the jury found no negligence on the part of defendants Jones and Quann. Yet the trial judge in his charge took notice out of the case, by charging that as a matter of law, the alleged defect "must have been in existence for

such a length of time that the property owners knew or should have known it was there and fixed it." Thus, if there was no negligence, the reason was that the "step" in the sidewalk was de minimis. Under those circumstances, the city could not be found liable either. Thus, even if there were evidence to show that the city created the step, and we repeat there was not, such an action could not have imposed liability on the city.

The second allegation of error concerns the failure of the trial judge to admit into evidence the deposition of Dorothy Quann. There is no doubt that such failure was error. Pennsylvania Rule of Civil Procedure 4020(a) provides: "At the trial, any part or all of the deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions: . . . (2) The deposition of a party . . . may be used by an adverse party for any purpose." Since Dorothy Quann was a party, appellant should have been permitted to introduce the deposition into evidence.

However, we are convinced that the error here was harmless. Appellant was able to call Miss Quann as on cross-examination, and question her as fully as appellant desired. Appellant was permitted to use the deposition to impeach. She simply was not permitted to read the deposition into the record, because of the trial judge's understandable view, though in conflict with the Rule, that such a procedure was a waste of valuable time and prevented the normally desirable confrontation of witnesses. As a matter of fact, the actual testimony of Miss Quann was virtually identical to her deposition. Although tactically it might have been better for appellant to have been able to

read the deposition into the record, rather than call this woman as on cross-examination, the evidence given was the same as that in the deposition, and we must assume that the jury reached its verdict on the evidence and not because of some emotional atmosphere allegedly created. Thus, mindful of the words of Mr. Justice MUSMANNO in *Richette v. Pennsylvania R.R.*, 410 Pa. 6, 29, 187 A. 2d 910 (1963), that "good judgment also dictates that, considering the clogged conditions of trial calendars, new trials should not be required unless the interests of justice imperatively require them," we conclude that the error in the instant case was harmless.

Finally, we have no difficulty at all in holding that there was no error in the exclusion of the photograph. Although it was undisputed that the accident took place on a dry day, the photograph was taken in the rain, and thus allegedly showed a mirror-type image, distorting the view. It is well-established that the admission of photographs is a matter within the discretion of the trial judge. *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A. 2d 357 (1966); *Puskarich v. Trustees of Zembo Temple*, 412 Pa. 313, 194 A. 2d 208 (1963). In *Puskarich*, it was held that the court properly excluded photographs taken under different weather conditions, and that to have admitted them would have been prejudicial error. Nor did the court below in the instant case prevent appellant from authenticating the photograph, as appellant claims. The court said: "I will sustain the objection. . . . Unless you can show that on the night of the accident that was the situation. It does not properly reflect what was there that night." The exclusion of the photograph was within the discretion of the trial judge, and we find no abuse of that discretion.

Judgment affirmed.

Mr. Justice MUSMANNO dissents.