## Gosha v. City of Philadelphia

*Allan H. Gordon,* for plaintiff.
*Jerry I. Drew,* for Commonwealth.
*Sandra Mazer Moss,* for City of Philadelphia.

KREMER, *J.,* February 17, 1982—

## I. INTRODUCTION

Plaintiff's decedent was seriously injured when her heel caught in a defect in the sidewalk in front of the State Office Building in Philadelphia. She initially sued the City and Tony DePaul. After sovereign immunity was abolished in Pennsylvania, the City joined the Commonwealth. A jury returned a verdict in the amount of $50,000 against both remaining defendants.[1] The verdict was molded by the court on November 27, 1980 in favor of the City and against the Commonwealth. On December 21, 1981, the court entered an order allowing for delay

---

1. Tony DePaul and Sons was dropped as a defendant in October of 1980, by stipulation of all parties.

damages pursuant to Pa.R.C.P. 238 in the amount of $5,444.06. Both defendants filed alternative motions for judgment n.o.v., or new trial.

We have cautioned ourselves to avoid prejudice against the Commonwealth because of its settlement posture in this case. Plaintiff, prior to trial, agreed to accept $4,000 in settlement. The City offered to pay $2,000. The Commonwealth refused to pay anything, despite the Court's urging that the case could be settled for less than the cost of trial to the City. Philadelphia County has a docket crowded with approximately 24,000 to 26,000 civil cases.

It is well settled that a judgment n.o.v. may only be granted in a clear case and any doubts must be resolved in favor of the verdict. In considering a motion for judgment n.o.v., the evidence and all reasonable inferences therefrom are to be considered in the light most favorable to the verdict winner. Atkins v. Urban Redevelopment Authority of Pittsburgh, 489 Pa. 344, 414 A.2d 100 (1980); Miller v. Checker Yellow Cab Company of Bethlehem, 465 Pa. 82, 348 A.2d 128 (1975).

The facts, so viewed in the light most favorable to plaintiff as the verdict winner, are as follows: On May 20, 1974, plaintiff's decedent (hereinafter sometimes referred to as plaintiff or decedent). Minnie Williams, went to the State Office Building, located on the southwest corner of Broad and Spring Garden Streets, Philadelphia, Pa. Upon the conclusion of her business in the State Office Building, plaintiff exited the building on to Broad Street. At that time there was a large crowd on Broad Street attending a parade in celebration of the Philadelphia Flyers' championship hockey victory and garnering of the Stanley Cup. Plaintiff proceeded to the sidewalk, heading towards City Hall. Once upon the sidewalk, plaintiff was caused to fall as a result of a

defect in the sidewalk. Plaintiff was unable to observe the defect due to the unusually heavy crowd present for the parade. As a result of the fall, plaintiff suffered a supracondylar fracture of her right femur.

## II. THE LIABILITY OF THE CITY IS SECONDARY ONLY AND THE COMMONWEALTH AS THE ABUTTING LANDOWNER IS PRIMARILY LIABLE.

The City argues that it is entitled to judgment because its liability to plaintiff is only secondary. In Borough of West View v. North Hills High School, 274 Pa. Super. 519, 522, 418 A.2d 527, 529 (1980) the Court, per Judge Van der Voort, stated:

"the liability of a municipality for injuries to third persons due to a defective or dangerous sidewalk is secondary to that of the abutting property owner: Flynn v. Chester, 429 Pa. 170, 173, 239 A.2d 322 (1968); Brady v. Philadelphia, 156 Pa. Super. 607, 612, 41 A.2d 355 (1945). The rationale of the rule is stated in Brady to be that 'recovery against the city is allowed on the theory that the city has neglected to perform its duty to require the property owner or tenant to maintain the sidewalk in a condition reasonably safe for travel . . . Consequently, where the plaintiff is awarded a verdict against the city, the city is entitled to a verdict over against the additional defendant upon whom the ultimate burden rests."

Under this rule, the City is entitled to indemnity, not judgment. The verdict has been molded to indemnify the City and the City has already received the consideration it is entitled to under the law.

### III. PLAINTIFF'S DEPOSITION WAS ADMISSIBLE AGAINST THE COMMONWEALTH

Plaintiff died on September 16, 1978 of causes unrelated to this case. She was therefore not available to testify at the trial. Her deposition was taken in April of 1978. At the time the deposition was taken only counsel for plaintiff and counsel for the City and for Tony DePaul and Sons were present. The Commonwealth was not represented because it was not a party to the suit at that time, and was not joined until June 1979, after plaintiff died.[2] At the trial the court permitted the deposition to be used against both the City and the Commonwealth.

Pa. R.C.P. 4020(a) provides as follows:

(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of a deponent as a witness.

(2) The deposition of a party . . . may be used by an adverse party for any purpose.

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the Court finds

(a) that the witness is dead, or
* * *

---

2. The Commonwealth was not joined as a party until the doctrine of sovereign immunity was abolished in Pennsylvania. See, Mayle v. Pa. Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978).

(e) upon application and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used

(4) If only part of a deposition is offered in evidence by a party, any other party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.

\* \* \*

The Commonwealth argues that the use of the deposition testimony was in violation of Rule 4020(a) because it was not present at, nor was it notified of the taking of the deposition. The Commonwealth also argues that the admission of the deposition was unfairly prejudicial because that was the only evidence which implicated the Commonwealth.

The purpose of excluding testimony, if the witness cannot be cross-examined, is to assure that the adverse party's interests are protected. Here, *at the time of the deposition*, it appeared that the City would have been primarily liable for any damages caused by the accident. The City appeared at the deposition, and examined plaintiff vigorously and completely. The Commonwealth has not complained of any relevant areas of examination not explored by the City, nor has it cited any specific questions which should have been asked which would have aided in any way in the defense of this action. It was only after the doctrine of sovereign immunity was abolished, that the Commonwealth could have been and was joined as a party. The issues in the case were not changed by the joinder.

It is true that the Commonwealth was prejudiced by the use of the deposition against it. However, this is the type of prejudice that is present in every case,

civil or criminal, when evidence is admitted against a party. The question to be addressed is whether it was unfairly and improperly prejudicial. We must answer no. At the time of the deposition all of the appropriate issues were explored by the City. The issues on the questions of liability were identical as to both defendants. The Commonwealth has not particularized any issue or specific issue that was not properly explored and addressed by the City.

Pa. R.C.P. 126 provides: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

Here, even though the Commonwealth was not actually present and was not actually represented at the deposition, because of the identity of issues on the question of liability, Rule 126 invites and allows the admission and use of the deposition under what might be styled a theory of constructive representation. Since the City was defending the exact position into which the Commonwealth was placed by the abolition of the doctrine of sovereign immunity, the City was realistically defending the Commonwealth at the time of the deposition. There is no suggestion that the representation was inadequate or ineffective. Therefore, while representation was not actual, it can fairly be said that the Commonwealth was constructively represented. This result is warranted by Rule 126's mandate to liberally construe the rules so as to expedite cases. If the Commonwealth had not been joined in this case after verdict, the City would have a right to seek indemnification. The law is clear that it is the adjacent landowner who is ultimately responsible for defects in

his sidewalk. Given the tremendous backlog of cases presently before the courts, the need to avoid a multiplicity of actions suggested that this case be heard in one proceeding to resolve the rights of all parties.

Upon consideration that (1) the Commonwealth was actually constructively represented by the City at the time of the deposition; (2) the City has a clear right to indemnification; (3) there is an absence of any suggestion of omission or error at the taking of the deposition and an absence of any suggestion as to any need for counsel, we hold that the Commonwealth was not unfairly prejudiced by the admission and use of the plaintiff's deposition at trial.

## IV. THE PHOTOGRAPHS WERE PROPERLY ADMITTED INTO EVIDENCE

Both defendants claim that the court erred in permitting the use of photographs taken about six months after the accident. We were guided by the rule that the admissibility of photographs is within the discretion of the trial judge, and that he will be reversed only on a showing of clear abuse of discretion or error of law. Tolbert v. Gillette, 438 Pa. 63, 260 A.2d 463 (1970); Nyce v. Muffley, 384 Pa. 107, 119 A.2d 530 (1956).

Here, plaintiff identified two photographs and the photographer identified two other photographs as having been taken at the same time and place. Plaintiff identified the specific crack in the photographs as the crack in which her heel caught. It was for the jury to decide if she was telling the truth and whether she was accurate. The verdict makes clear that they believed her.[3]

---

3. The fact that plaintiff identified the crack in the photo as the crack in which her heel caught also serves to refute the

Defendants cite Puskarich v. Trustees of Zambo Temple, 412 Pa. 313, 194 A.2d 208 (1963), where the court upheld the exclusion of photographs taken three and one half months after a sidewalk slip and fall. They also cite Semet v. Andorra Nurseries, Inc., 421 Pa. 484, 219 A.2d 357 (1966), where the court upheld the exclusion of pictures of a broken ladder taken only 22 days after an accident. However, those cases are distinguishable and do not govern this case. In those cases the court exercised discretion in favor of exclusion — in this case discretion was exercised in favor of admission. In the Puskarich and Semet cases there was insufficient evidence that the photos correctly represented the condition of their subjects at the time of the accident. Here, plaintiff identified the crack in the pictures as the place where she fell. The jury could reasonably infer that the pictures represented the crack as it was at the time of the accident and that was the purport of her testimony. They were also properly allowed to decide if P7 and P8 were pictures of the same spot depicted in P1 and P2, as testified to by the photographer, Mr. Crokton.

This position was earlier adopted by our Supreme Court in Teagle v. City of Philadelphia, 430 Pa. 395, 243 A.2d 342 (1968). Plaintiff in Teagle had fallen into a water-filled hole in the street. Plaintiff testified that the hole had been 4-5 inches deep. Defendant produced a photo where a ruler was in place showing the water to be only one and one half inches deep. The trial court admitted the pictures, and instructed the jury to consider all of the surrounding circumstances regarding the hole. The Supreme Court affirmed.

---

defendants' claim that plaintiff failed to identify the situs of the accident.

The pictures were clearly relevant in this case. They were identified by plaintiff and the photographer. The jury was given the issues whether there was a defect in the sidewalk, and whether the crack shown in the pictures was the crack in which her heel caught and whether that was the condition it was in at the time of the accident. We do not believe it was an abuse of discretion or error of law requiring reversal, for the trial court to have submitted these questions to the jury as the factfinder.

## V. DEFENDANTS HAD CONSTRUCTIVE NOTICE OF THE SIDEWALK DEFECT

Defendants next contention is that there was insufficient evidence to support a finding of constructive notice of the defect. In order to establish constructive notice, it is necessary to show that the defect existed for such a period of time that it could have been corrected with the exercise of reasonable care. Murray v. Siegal, 413 Pa. 23, 195 A.2d 790 (1963).

In Stais v. Sears-Roebuck & Co., 174 Pa. Super. 498, 502, 503, 102 A.2d 204, aff'd. 378 Pa. 289, 106 A.2d 216 (1954) the court, per Judge Wright, stated:

"What will amount to constructive notice of a defect or dangerous condition existing upon a defendant's premises necessarily varies under the condition of each case. Among the factors affecting the question are the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonable prudent person, had to remedy it . . . It is not always necessary for the Plaintiff to produce positive testimony as to how long the defect existed."

In this case there was testimony and other evidence that the State Office Building is a large building with many people going in and out for many different reasons. There was testimony and other evidence that it is located in a heavily trafficked part of the city. The jury was entitled to consider the nature of the building and the nature of the area in the downtown area of the largest city in the Commonwealth and "in the shadow of its City Hall." The court charged the jury that it could consider these factors and could also consider the length of time it would take for a defect of this type to develop in concrete.

In Williams v. Bashman, 457 F. Supp. 322, 327 (E.D. Pa. 1978), plaintiff was suing an attorney for malpractice. Plaintiff was required to prove that she would have recovered in the underlying cause of action, involving a slip and fall as a result of a sidewalk defect. The federal court applied Pennsylvania law and held that the defect in question was "not one which occurred in a trice or a wink of the eye; rather it [was] one which resulted from a long continued period of deterioration." Therefore, plaintiff was not required to offer proof as to the exact day when the defect appeared. Instead, the court, citing Stais, allowed itself, as fact-finder, to infer that the defect had existed for a period of time long enough to constitute constructive notice to the City and to Bashman (the two defendants). The jury in this case had the right to infer that the crack in the cement sidewalk did not occur in so short a time that it could not be noticed in front of a busy state office building. The jury had the right to infer that the defect should have been discovered had either defendant exercised reasonable care or that the defect was discovered and was noticed and that nothing was done to correct it.

Constructive notice of a sidewalk defect is imputed to a property owner in less time than to the City. Schultz v. Pivar, 370 Pa. 271, 88 A.2d 74 (1952). In this case the Commonwealth is a building owner and its responsibility is the same as that of any other property owner. The Commonwealth's building is a large office building with significant traffic going in and out all week. The jury had the right to draw the inference that the Commonwealth had constructive notice of the defect. The jury therefore found the Commonwealth liable.[4]

## VI. THE DEFECT WAS NOT TRIVIAL AS A MATTER OF LAW

Defendants argue that the size and nature of the defect makes it trivial as a matter of law, citing Bosack v. Pittsburgh Railway Co., 410 Pa. 558, 563, 189 A.2d 877, 880 (1963):

"Time and again our courts have held that an elevation, a depression or an irregularity on a street or highway may be so trivial that courts, as a matter of law, are bound to hold that there was no negligence in permitting such depression or irregularity to exist . . ."

The reason for this rule of law is stated in German v. City of McKeesport, 137 Pa. Super. 41, 46, 8 A.2d 437, 440-441 (1939):

"The law does not require that sidewalks shall be as free of defects, imperfections, irregularities, unevenness, etc., as the floors of buildings. A reason-

---

4. We need not consider the question as to the City because they are to be indemnified by the Commonwealth. See, Section II of this opinion, supra. However, we will note that notice to the City is to be measured by the presence of the defect on a sidewalk of one of the major traffic arteries of the City, in the very shadow of City Hall and in an area of actual and expected intense usage.

ably safe condition is all that is necessary. Our climate, with its rain and snow, freezing and melting, frost and thaw, with their effects on exposed surfaces, including sidewalks, makes impossible the perfection of evenness to be expected in buildings and covered places."

The standard for determining triviality established in Bosack is that a paving defect is trivial when "it would be completely unreasonable, impractical and unjustifiable" to hold a defendant liable for [its] existence. (410 Pa. at 565, 189 A.2d at ____.

An injured plaintiff may not be denied relief simply because some persons might say a hole in a sidewalk is small. If it is large enough to catch a person's heel during a normal step and to cause the serious injuries plaintiff suffered in this case, a jury may conclude that there should be responsibility. Our Supreme Court has recognized this and has held that there *is* an area where the question should be submitted to the jury, whose duty it is to consider all the relevant circumstances. Henn v. Pittsburgh, 343 Pa. 256, 22 A.2d 742 (1941). To hold otherwise would make the courts the ultimate arbiter of the inches or fractions of an inch which are to be used to define "trivial" and "significant". That would be an improper and unwarranted invasion of the province of the jury and should not be tolerated.

In the Henn case the court stated in 343 Pa. at 258, 23 A.2d at 743:

"The extent of irregularity which may be present in a street without convicting a municipality of negligence in its maintenance varies with other circumstances such as amount of travel, actual location of the rise or depression, character of material with which the pavement or walk is constructed, nature of the irregularity and other circumstances."

These factors were considered by President Judge Jamieson, sitting without a jury, in an analogous case: Massman v. City of Phila., 44 D.&C. 2d 636 (1967)[5], aff'd per curiam, 430 Pa. 99, 241 A.2d 921 (1968). President Judge Donald Jamieson rendered a verdict for plaintiff and held that where there was a ½ inch deep crack in the cement pavement 28 inches long, which was jagged, irregular and clearly discernable, and on a busy thoroughfare, and plaintiff's flat heel caught in the crack or hole, it is for the trier of fact to determine whether or not defendant exercised reasonable care in maintaining the premises in a safe condition.

In the Massman case (at pages 639-640) Judge Jamieson quoted the following from Breskin v. 535 Fifth Avenue, 381 Pa. 461, 113 A.2d 116 (1955).

"What constitutes a defect sufficient to render the property owner liable must be determined in the light of the circumstances of the particular case, and 'except where the defect is obviously trivial, that question must be submitted to the jury'. . . . But 'there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to a fraction of an inch, a result which is absurd'. . . . No definite or mathematical rule can be laid down as to the depth or size of a sidewalk depression necessary to convict an owner of premises of negligence in permitting its continued existence. . . ."

In this case, the jury found that both defendants had not exercised reasonable care in maintaining

5. The appeal was taken from the decision of the court en banc which dismissed and overruled motions for new trial and for judgment n.o.v. The court en banc consisted of President Judge Jamieson, Judge Stanley M. Greenberg and Judge (now Mr. Justice) James T. McDermott.

the sidewalk. The State Office Building is in a very heavily travelled part of the city. People are required to enter and exit the building in order to conduct business with the Commonwealth. This was, in fact, the very reason defendant was in the building. It is not "completely unreasonable, impractical and unjustifiable" to require defendants to properly maintain the sidewalk outside of and adjacent to such a building. There is notice that people must come to the building, and must traverse that very stretch of pavement where plaintiff suffered her grievous injuries. The pictures indicate that the defect is clearly and immediately visible. The fact that the heel of decedent's shoe entered into and caught on the hole is evidence that the hole was large enough for a heel to go into and catch so as to throw a woman to the ground. The jury had the right to infer that the decedent was wearing heeled shoes and not spiked or stiletto heels. She was an elderly, lower-income woman, not given to so-called high heels.

The jury had the right to infer that the Commonwealth should have inspected the sidewalk or did inspect the sidewalk, observed the defect and failed to repair it. The requirement that the Commonwealth, as a building owner, repair this type of defect in these circumstances was not unreasonable and did not impose an impracticable and unjustifiable burden. Once a jury determined that the defendants were negligent in not repairing a pavement defect, a hole in the sidewalk large enough to be seen, large enough to cause plaintiff to fall and be seriously injured, which is located in front of an entrance to a large, very frequently and heavily used public building, on a (or *the*) major street in or near center-city, this court cannot say that such a defect is so trivial that the defendants cannot be charged with the responsibility for the damages caused. We cannot say

that such a finding by a jury is so completely unreasonable, impractical and unjustifiable that, as a matter of law, a judgment n.o.v. must be entered in favor of the defendants. To do so would constitute a grave miscarriage of justice.

## VII. PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT AS A MATTER OF LAW

In Beil v. City of Allentown, 434 Pa. 10, 12-13, 252 A.2d 692, 694 (1969), the court stated:

"One who, in broad daylight, walks into an obvious defect in a sidewalk is presumptively negligent and the burden is upon that person to show conditions outside of himself which prevent him seeing the defect or which would excuse his failure to observe it."

This rule does not apply if there is some external condition which prevented him from seeing the defect. Pro v. Pennsylvania R.R. Co., 390 Pa. 437, 135 A.2d 930 (1957); Sculley v. City of Philadelphia, 381 Pa. 1, 112 A.2d 321 (1955). In both the Pro and the Sculley cases plaintiffs were found not contributorily negligent, while crossing a street, because their attention was distracted by oncoming vehicles. The court in both cases held that this was enough of a reasonable distraction to enable the factfinder to conclude that there was no contributory negligence.

In Bozarth v. Penn Fruit Company, 187 Pa. Super. 217, 144 A.2d 455 (1958), the court recognized that a pedestrian's attention might be distracted by a large crowd; that a large crowd can force a person out of his intended path or prevent a defect from being seen. In Massman, supra, the court noted the fact that a crowd was walking in City Hall courtyard at rush hour and stated "the density of the crowd obstructed plaintiff's ability to observe the paving conditions."

Decedent testified that the streets were very crowded because of the Flyer's parade:

Q. Let me ask you, when you fell, could you reach out in front of you, touch somebody?

A. There were people all up and down the street because the day the Flyers were celebrating, the streets were full of people. One closest to me, I couldn't tell that because the streets were full of people.

Q. Do you remember if you could have reached out and touched the person in front of you?

A. When the streets are full of people you bump into them.

Q. I am asking whether you remember if you could reach out and touch the person in front of you?

A. Sure I could have touched the person in front of me and side too. It is just that many people on the street.

If a crowd is so dense that a plaintiff can touch the person in front of her, or the press of the crowd is so great that it carries plaintiff along, or obstructs plaintiff's view of the pavement, then it cannot be said that plaintiff's negligence is so obvious as to be determinable as a matter of law. Bozarth, supra; Massman, supra,

In Pro v. Penna. R. R. Co., supra, 441, the court stated: "contributory negligence may be judicially determined only where it is so clear and unmistakable that there is no room for fair and reasonable persons to disagree as to its existence." Here, it is obvious that the jury disagreed with the defendants, and found that plaintiff was not contributorily negligent. Given the testimony about the crowd and the parade, this court cannot say that the issue was so clear and unmistakable that decedent should have been declared to be guilty of contributory negligence as a matter of law.

## VIII. THE TRIAL COURT DID NOT ERR IN ITS CHARGE ON BURDEN OF PROOF AS TO CONTRIBUTORY NEGLIGENCE

Defendants also contend that it was error to charge the jury that the burden was on defendants to prove that plaintiff was contributorily negligent. While it is true that Beil does speak of a presumption of contributory negligence, it by no means creates a new rule that the presumption shifts the burden of proof to plaintiff to show that she was not contributorily negligent.

Burden of proof may be defined in two ways. First, there is the risk of non-persuasion of the jury. This is defined by 9 Wigmore Evidence (Chadbourne Rev. 1970), sections 2485-2486 as the burden borne by a party of putting into evidence facts which persuade the tribunal to act in favor of that party. This burden usually falls on the party who has made an affirmative allegation. It also falls on those who make a negative allegation such as non-performance of a contract.

The second type of burden of proof is the duty to produce evidence, or the burden of production. Wigmore, Sec. 2487. This duty falls first on the party who bears the risk of non-persuasion but can shift from party to party during the trial. This is quite different from the risk of non-persuasion, which never shifts during the trial. Wigmore, sec. 2489.

Presumptions are used in connection with the burden of production. Two types of presumptions are generally recognized presumptions of law, and presumptions of fact. A presumption of law is "a rule of law laid down by the judge and attaching to one evidentiary fact certain *procedural consequences* as to the duty of production of other evi-

dence by the opponent. Wigmore, Sec. 2491. (Emphasis added.) A presumption of fact is no more than an inference the jury is allowed to draw from the evidence before them. For Wigmore, there is only one type of "real" presumption, the presumption of law.

The presumption in Beil is a presumption of law. It is a rule laid down by our Supreme Court. It is based on certain evidentiary facts, i.e., that a given plaintiff stepped into an obvious defect in the sidewalk on a clear day. Finally, it has procedural consequences because plaintiff must come forward with evidence of conditions outside of herself which distracted her, or the question will be taken from the jury, and plaintiff will be non-suited.

The presumption in this case is one which by its very terms does no more than require plaintiff to produce evidence to rebut it. The key words from Beil are: "and the burden is on [plaintiff] *to show conditions* . . . ." (Emphasis added.) This, then, is what Wigmore styles a presumption of law, a "real" presumption. It has procedural consequences as to the burden of production.

In order to rebut the Beil presumption, plaintiff came forward with evidence that the press of the crowd and the parade distracted her so much that she did not and could not see the hole in the sidewalk. Once she came forward with this evidence, the presumption disappeared. As Wigmore says, in section 2491:

"the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the

contrary (sufficient to satisfy the judge's require-ment of some evidence), the presumption disap-pears as a rule of law and the case is in the jury's hands free from any rule." (Emphasis added).

This rule has been adopted in Pennsylvania. Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644, 647 (1934) (in which Mr. Justice Maxey quoted Wigmore with approval on behalf of the Su-preme Court); Stine v. Borst, 205 Pa. Super. 46, 205 A. 2d 650 (1964).

If the presumption is rebutted, the issue of con-tributory negligence remains before the jury. The presumption affected only the burden of production of evidence. The risk of non-persuasion never shift-ed from defendant to plaintiff.

Defendants' entire argument comes down to the question of who bears the risk of non-persuasion of the jury on the issue of contributory negligence. Plaintiff has no duty to make out a case free of con-tributory negligence. It is plaintiff's duty to prove negligence and she bears the risk of non-persuasion as to that issue. Defendants are the ones who bear the risk of failure of proof on the issue of contrib-utory negligence. Heimbach v. Peltz, 384 Pa. 308, 121 A.2d 114 (1956). An instruction requiring plaintiff to bear the burden of proving a case free from contributory negligence was held to be revers-ible error in Stegmuller v. Davis, 408 Pa. 267, 182 A.2d 745 (1962). Since the presumption did not re-lieve defendants of the risk of non-persuasion, once plaintiff came forward with evidence to rebut the presumption of contributory negligence, the issue went to the jury with the risk or burden of proof on defendants. We conclude there was no error in the court's instructions on the subject of contributory negligence.

## IX.  THE COMMENTS BY THE COURT WERE NOT PREJUDICIAL

Defendants allege that certain comments by the court were prejudicial to the defense. After reviewing the record, the court is of the opinion that none of the comments complained of post-trial were in any way prejudicial to the defendants. Any prejudice which might have existed was certainly obviated by the court's *constant* cautionary charges to the jury throughout the trial and in the charge that the jury and the jury alone was to resolve all factual questions and not to be improperly influenced by questions or comments by the court or counsel. We do not engage in further discussions or analysis because no objections were made by counsel at the trial and the recent decisions of the Supreme Court in Tagnani v. Lew, 493 Pa. 371, 426 A.2d 595 (1981) and in Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 225, 322 A.2d 114 (1974) remove these matters from any consideration.

## ORDER

And now, this February 17, 1982, defendants' alternative motions for judgment n.o.v. or a new trial are overruled and denied for the reasons stated in the foregoing opinion. The prothonotary is directed to enter judgment on the verdict, as molded, in the amount of $55,444.06, with lawful interest from date of the verdict, in favor of the plaintiff and against the defendants, and in favor of defendant City of Philadelphia against defendant Commonwealth of Pennsylvania for indemnification.