**Karin SHERMAN, Appellant,**

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1998.
Decided Jan. 31, 2000.

Daniel J. Mann, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellee.

Before DOYLE, President Judge, and COLINS, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.,

DOYLE, President Judge.

Karin Sherman appeals from an order of the Court of Common Pleas of Philadelphia County which granted the City of Philadelphia's (City) motion for summary judgment, thereby dismissing her negligence claim against the City.

Sherman was injured on June 9, 1994, when she tripped and fell on a section of defective sidewalk and struck her head while walking in front of the City's Fire Department Administration Building located at 240 Spring Garden Street. Although the sidewalk where Sherman fell is in front of the Fire Administration Building, which the City owns, that section of Spring Garden Street abutting the sidewalk is not a City street, but has been designated as a

state highway pursuant to Section 2 of the State Highway Law.[1]

On April 23, 1996, Sherman initiated a negligence action against the City seeking damages for her injuries. Following discovery, the City filed a motion for summary judgment, asserting its general immunity from negligence actions and alleging that Sherman's lawsuit did not fit within any of the recognized exceptions to governmental immunity. Common Pleas granted the City's motion, and Sherman appealed.

Before engaging in a lengthy discussion about the particular facts in this appeal, however, we first examine the statutory scheme under which those facts must be examined. Following our Supreme Court's abolition of all governmental immunity for local agencies in 1973 in *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973), *superceded by statute*, 53 P.S. §§ 5311.101–5311.803,[2] presently 42 Pa. C.S. §§ 8541–8564, the General Assembly reinstated governmental immunity, but created several exceptions to such immunity in specific instances in 42 Pa.C.S. § 8542(b), which provides, in relevant part, as follows:

(b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(3) **Real property.**—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. **As used in this paragraph, 'real property' shall *not* include:**

(i) trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;

(ii) facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;

(iii) streets; or

(iv) sidewalks.

. . . .

(7) **Sidewalks.—A dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency,** except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. **When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.**

42 Pa.C.S. § 8542(b) (emphasis added).

From even a cursory review of these statutory exceptions to governmental immunity, it is readily apparent, first, that any strict reading of Section 8542(b)(7) would preclude Sherman from recovering for her injuries because the sidewalk on which she fell was not within the right-of-way of a street owned by the City, and second, that the underlying premise supporting the statutory scheme of Section 8542(b)(7) is predicated exclusively upon the City's secondary liability for the maintenance of a sidewalk.

---

1. Act of May 7, 1937, P.L. 589, *as amended,* 36 P.S. § 961–2.

2. Act of November 26, 1978, P.L. 1399.

Conversely, in other sections of the statutory law dealing with sovereign immunity, the General Assembly provided that the Commonwealth's liability for sidewalk injuries is explicitly limited to primary liability, *i.e.*, the liability of a private property owner, as evidenced by the exception contained in 42 Pa.C.S. § 8522(b), which provides as follows:

> (b) **Acts which may impose liability.**— The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> . . . .
>
> (4) **Commonwealth real estate, highways and *sidewalks*.**—A dangerous condition of Commonwealth agency real estate **and sidewalks**, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa.C.S. § 8522(b)(4) (emphasis added); *see also Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995); May 1978 Report of Joint State Government Commission Task Force on Sovereign Immunity (Report) at 13.

In its motion for summary judgment, the City argued, understandably, that because the Commonwealth owns that section of Spring Garden Street which is adjacent to the City's Fire Administration Building, as the result of its designation as a state highway the sidewalk was within the right-of-way of the Commonwealth's highway and not within the right-of-way of one of its streets, and, therefore, the sidewalk exception does not apply. Common Pleas, relying on this Court's decision in *Bruce v. Gadson*, 127 Pa.Cmwlth. 159, 561 A.2d 74 (1989), agreed and granted the City's motion. On appeal to this Court, the case was originally argued in February of 1998, but, due to the importance of the issue, it was listed for argument before the Court en banc in October of 1998.

On appeal,[3] Sherman argues that Common Pleas erred as a matter of law by concluding that the sidewalk on which she was injured was not within the right-of-way of a street owned by the City and, therefore, she argues, her cause of action is within the sidewalk exception of governmental immunity.

Because our resolution of this issue directs us to venture into heretofore unexamined areas of the principles of immunity, a brief historical review of the law of immunity as it existed prior to *Ayala* and *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), *superceded by statute*, 42 Pa.C.S. § 8522(b)[4] would be in order. Prior to the enactment of the current immunity statute by the General Assembly, the Commonwealth enjoyed *absolute* immunity against negligence actions unless it consented to suit. *See Monongahela Navigation Co. v. Coons*, 6 Watts & S. 101 (Pa.1843). Conversely, the immunity of a local agency was never absolute; rather, liability existed (a) for failure to maintain roads, bridges, and sidewalks; (b) in actions based upon improper management and use of municipal property; and (c) in cases in which the local agency function was deter-

---

**3.** Our standard of review of an order granting a motion for summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. *Peterson v. Philadelphia Housing Authority*, 154 Pa.Cmwlth. 309, 623 A.2d 904 (1993). Summary judgment is appropriate when, after reviewing the record in a light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Peterson.*

**4.** The Commonwealth's judicially created absolute immunity from suit was struck down by the Supreme Court in 1978 by *Mayle.*

mined to be "proprietary" as distinguished from "governmental." *See, e.g., Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 13, 568 A.2d 931, 937 (1990) (Papadakos, J., dissenting); *Shields v. Pittsburgh School District*, 408 Pa. 388, 184 A.2d 240 (1962). If the local agency was engaged in a proprietary function, then its liability was no different than that of a private citizen. *See Honaman v. City of Philadelphia*, 322 Pa. 535, 185 A. 750 (1936).

Although the distinction between the immunity of the Commonwealth and that of the local agencies was not characterized as "sovereign" versus "governmental immunity" until our Supreme Court's decision in *Ayala*, it is clear that the distinction nonetheless existed. This judicially created immunity for the Commonwealth and local agencies perpetuated until our Supreme Court's decisions of *Ayala* and *Mayle* when the Supreme Court, concluding that immunity was a common law doctrine created by the Courts and, as such, could be dismantled by the Courts, abolished both sovereign and governmental immunity.

As a result of the Supreme Court's decisions in these two cases, both the Commonwealth and local agencies were subject to the common law doctrines of liability from which their immunity had previously shielded them. At common law there were two types of liability which could be imposed. The first, primary liability, is imposed on a party who is directly negligent. *See Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983). Primary liability flows from the duty imposed on an individual or entity who owns or controls property. An example is the duty imposed upon a property owner to keep the sidewalks in front of his property in good repair.

Conversely, secondary liability "rests upon a fault that is imputed or constructive only, being based on some legal relation[ship] between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible." *Builders Supply v. McCabe*, 366 Pa. 322, 328, 77 A.2d 368, 371 (1951). Our Supreme Court in *Builders Supply* further distinguished between primary and secondary liability as follows:

> The difference between primary and secondary liability is not based on a difference in **degrees** of negligence or on any doctrine of **comparative** negligence. . . . It depends on a difference in the **character** or **kind** of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondary liability exists, for example, . . . when a pedestrian is injured by falling in a hole in the pavement of a street; in such a case the abutting property owner is primarily liable because of his failure to maintain the pavement in proper condition, but the **municipality** is secondarily liable because of its having neglected to perform its duty of policing the streets and seeing to it that the property owners keep them in repair; if therefore the injured person chooses to bring suit against the **municipality** the latter can recover indemnity from the property owner for the damages which it has been called upon to pay.

*Id.* at 328, 77 A.2d at 370 (second emphasis added). At common law, a local municipality was required to ensure that the owner of the property abutting a sidewalk within the right-of-way of a street that the municipality owned kept the property in good repair or that the municipality made the required repairs itself. *Fisher v. City of Philadelphia*, 112 Pa.Super. 226, 170 A. 875 (1934). That was never the law where the *Commonwealth* owned the highway or the right-of-way and the property owner negligently maintained the sidewalk. The Commonwealth was never liable in such a situation, even under a theory of secondary liability, because there was never an

obligation on the Commonwealth to see to it that the abutting property owners along its miles of highway kept the property, including the sidewalks, in good repair.

In response to the Supreme Court's decisions in *Ayala* and *Mayle*, in 1978, the General Assembly adopted what we will designate the Sovereign and Governmental Immunity Acts, thereby limiting both entities' immunity in specific situations. Particularly relevant to the present case, the General Assembly recognized the concept of primary liability as it existed at common law by abrogating the immunity of local agencies and the Commonwealth for injuries occurring on property which either entity owned or controlled. *See* 42 Pa.C.S. § 8522(b)(4); 42 Pa.C.S. § 8542(b)(3).

In addition, however, the General Assembly recognized the fact that, at common law, the liability of a local agency was not only singular, as was that of the Commonwealth, but rather local agencies had *additional* liability that the Commonwealth did not have, *i.e.*, the common law duty to maintain sidewalks. This recognition is evidenced in 42 Pa.C.S. § 8542(b)(7), the "sidewalk exception," which imposes *secondary* liability on a local agency for an injury which occurred on a sidewalk within the right-of-way of a street owned by the agency. It is significant that the exceptions to sovereign immunity contain no such exception. This absence recognizes the fact that, at common law, unlike a local agency, the Commonwealth had no duty to keep sidewalks which it did *not* own in good repair. *See Report* at 13.

**However, both the Commonwealth and local agencies were always primarily liable for the negligence occasioned by their failure to maintain all of their real estate, *including the sidewalks* on their property abutting their own buildings.** *See Osborne v. City of Pittsburgh,* 192 Pa.Super. 387, 161 A.2d 636 (1960), In *Osborne,* the City of Pittsburgh, the School District of Pittsburgh and the County of Allegheny acquired title to a property which abutted a city-owned street by virtue of a treasurer's sale. Subsequent to acquiring the property, Osborne fell and injured herself on a defective section of the sidewalk in front of the property and successfully sued the City, the school district and the county by virtue of their ownership of the property. On appeal to the Superior Court, the issue was whether the school district and the county, although they did not join in the purchase of the property, were responsible for contribution because the property was purchased to satisfy taxes owed to those two entities. The Superior Court concluded as follows:

The lower court concluded that there was liability. It stated that Allegheny County and the School District of Pittsburgh are bound to maintain safely the sidewalk on the unimproved properties purchased by the City of Pittsburgh at tax sales. With this contention we are bound to agree.

. . .

The School District has a strong argument when it asserts that the City is primarily liable for the maintenance of its streets. The only weakness with that argument lies in the fact that the liability of the City is secondary and **the primary liability rests upon the property which in this case is held by the *three* taxing authorities. . . .**

The City is correct in its contention that the County and School District should contribute in accordance with their proportionate interest at the time of the acquisition of the property by the City at the treasurer's sale.

Another convincing argument points out that . . . the excess of the proceeds over taxes realized should be distributed to the other taxing bodies in proportion to their tax levies. The implication is that all three bodies have an interest in the properties beyond the collection of delinquent taxes. We agree with the appellees that the title is vested in all three bodies and any tort liability should be jointly shared.

*Id.* at 637–38 (emphasis added). With these principles of liability in mind, we now turn to the issue of governmental immunity and the relevant exceptions we must consider in this case.

With regard to sovereign immunity, Section 8522(a) of the Judicial Code, 42 Pa. C.S. § 8522(a) provides in relevant part as follows:

> § 8522. **Exceptions to sovereign immunity**
>
> (a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

With regard to governmental immunity, as noted above, the General Assembly has abrogated the immunity of local agencies as to real estate in two respects relevant to the present case. A local agency is not immune from suit for injuries caused by real property that is in the care, custody or control of the local agency under the real property exception. In addition, a local agency is also responsible for injuries occurring on sidewalks owned by others, but within the rights-of-way of its own streets under the sidewalk exception.

■ As the discussion above illustrates, the liability imposed upon a local agency under the *real property* exception is primary, because liability flows directly from the duty of the local agency as the owner, possessor or custodian of the property and not from any imputed duty. It would be liable in this respect as would the Commonwealth or any private landowner.

We must conclude, therefore, that, under the real estate exception, the local agency was intended to have the same duties as any private landowner to keep the property, **including the adjacent sidewalk**, which is part of its real estate, in good repair and that the local agency is *primarily* responsible for injuries which arise from its failure to do so. *Flynn v. Chester*, 429 Pa. 170, 239 A.2d 322 (1968).

■ Moreover, a local agency has the *additional* burden, as it did at common law, to keep sidewalks owned by others in good repair if the sidewalk is located within the right-of-way of streets it owns. In this situation, unlike the exception in Section 8542(b)(3), a local agency is only secondarily liable under Section 8542(b)(7), because the assumption is that it does *not* own the property, and, therefore, its liability under the sidewalk exception flows from its common law duty to keep the sidewalks within its jurisdiction in good repair. *See Restifo v. City of Philadelphia*, 151 Pa. Cmwlth. 27, 617 A.2d 818 (1992). Again, it must be stressed that a local agency's secondary liability does not flow from a breach of its duty as the owner of the real property adjacent to the sidewalk, but from its imputed duty to ensure that property owners keep their property, including the sidewalks adjacent thereto, in good repair. *Flynn.* With these principles in mind, we will now review several decisions of this Court dealing with the exception at issue, the sidewalk exception.

In *Bruce v. Gadson*, 127 Pa.Cmwlth. 159, 561 A.2d 74 (1989), the plaintiff was injured when she fell on a defective sidewalk which was adjacent to **privately-owned property** in the City of Philadelphia. The sidewalk on which she fell abutted Lancaster Avenue, which, pursuant to the State Highway Law, was designated a Commonwealth highway. Bruce filed suit against the City of Philadelphia and the private owner of the property where she fell, but Common Pleas dismissed Bruce's action as to the City. On appeal to this

Court, we affirmed the judgment of Common Pleas, concluding that "the City did not own either the street or the sidewalk because the sidewalk was adjacent to a state road and the sidewalk exception therefore did not apply." *Id.* at 74–75. We went on to note that "[w]ithout ownership, the agency is neither primarily nor secondarily liable." *Id.* at 75. This holding was used as the basis for the subsequent conclusion in *Lyons v. City of Philadelphia*, 159 Pa.Cmwlth. 107, 632 A.2d 1006 (1993), a case where we affirmed Common Pleas' dismissal of a suit filed by a pedestrian against the City for injuries she sustained when she fell into a hole on the sidewalk along Bustleton Avenue, a highway designated as a Commonwealth highway. Like *Gadson, Lyons* involved the *private* ownership of property abutting a Commonwealth-owned highway.

Further, in *Gray v. Logue*, 654 A.2d 109 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995), we affirmed the judgment of Common Pleas granting Bedford Borough's motion for summary judgment, dismissing a suit filed by a plaintiff who had tripped and fell over a protruding piece of pipe in front of **private property**. In doing so, we again reaffirmed the principle that the sidewalk exception is designed to impose only secondary liability, and, under that exception, liability can only be imposed when the sidewalk at issue is within a right-of-way owned by the local agency, thus imputing the agency's duty to ensure that the sidewalks under its jurisdiction are kept in repair.

Most recently, however, for the first time, in *White v. City of Philadelphia*, 712 A.2d 345 (Pa.Cmwlth.1998), we examined a case in which the Plaintiff, White, was injured while walking on a section of sidewalk in front of the **City of Philadelphia's Visitors Center**, which, of course, is public, rather than private property. The City filed a motion for summary judgment, asserting that the sidewalk on which White fell abuts a Commonwealth highway and, therefore, the City did not "own" the right-of-way encompassing the sidewalk and was immune from suit. The Court of Common Pleas granted the motion.

On appeal to this Court, we reversed the Common Pleas Court order, concluding that the record was insufficient to establish that the City did not own the right-of-way which encompassed the sidewalk. In reaching this conclusion, the Court reasoned that *Gray* and its predecessors had created an anomaly in the "otherwise complete coverage" of the exceptions to immunity. *White*, 712 A.2d at 347. To reconcile this anomaly, the Court looked to the relevant provisions of the State Highway Law and concluded that the provisions of that law did not impose a duty on the Commonwealth for upkeep of the sidewalks in cities of the first class which abutted roads that it took over via statute. The Court went on to establish a rule of law, which, by our own admission, would have limited applicability, stating that:

> [a]ccordingly, the Court interprets 'sidewalks within the rights-of-way of streets owned by the local agency' in Section 8542(b)(7) to include *sidewalks* **in a city of the first class** that are owned by the city and that abut a State highway.

*White*, 712 A.2d at 348 (emphasis added). Although the Court concluded that the City was not immune from suit, that determination was based essentially upon a conclusion that the City **owned** the sidewalk.[5] Nonetheless, the opinion concluded that the City was not immune from suit based upon the sidewalk exception, which, as noted above, imposes only **secondary** liability

---

5. This conclusion, and indeed the analysis used to reach the conclusion, focused solely on whether the City or the Commonwealth owned the sidewalk and was therefore responsible for the maintenance of the sidewalk. The plain language of the sidewalk exception, however, requires a determination of who owns the *right-of-way containing the sidewalk*. It would appear, then, that the *White* opinion incorrectly disregarded the phrase "within a right-of-way" owned by the local agency.

upon a local agency and not the real estate exception.

To illustrate the problem which confronts the Court and our statutory interpretation of Section 8542(b), consider the following scenarios, assuming in each case that negligent conduct caused the plaintiff's injury. First, a shopper is injured when she trips and falls on a sidewalk in front of a store in the Borough of Media. In that case, the result is clear and logical: the store is primarily liable because it owns the property where the shopper fell, and the Borough is secondarily liable, a result clear from the exceptions to governmental immunity. The result is changed, however, if the road in front of the store is a state highway. In that case, the store is still primarily liable, but there is no secondary liability because the Borough does not own the right-of-way within which the sidewalk sits. In addition, the Commonwealth, by virtue of the fact that the real estate exception to sovereign immunity only imposes primary liability, can never be secondarily liable for any injuries because it does not have the same duties to ensure that sidewalks are safe as do the local agencies; rather, its duty and corresponding liability is limited to that of the private landowner. Accordingly, in that situation, only the store is liable for the injuries; but the injured party at least has a right to recover from the store.

Next, consider a situation in which an individual is strolling on a sidewalk in Media near the Borough Hall building and trips and falls on a defective surface. Assume further for the purposes of the hypothetical that the street in front of the building is a state-owned highway. In this situation, whether there is **any** liability under the current interpretation of the sidewalk and real property exceptions to governmental immunity is contingent upon **where** the person fell. If she fell on the sidewalk in front of the Borough Hall, under our current interpretations of immunity law, **there would be no liability at all**; there would be neither primary nor secondary liability because she fell on a sidewalk that was not within a right-of-way of a street owned by the Borough of Media. Additionally, there would be no primary liability because sidewalks owned by the Borough are excluded from the definition of "real estate" by Section 8542(b)(3), despite the fact that the Borough, as the owner of the property, would ordinarily be primarily responsible for the maintenance of the sidewalk.

If, however, the person fell on the walkway of the Borough building, a foot closer to the building than the sidewalk, the Borough would be primarily liable under the real estate exception. Clearly, in both scenarios the person was injured on Borough property, i.e., the Borough owns both the sidewalk in front of and the walkway leading to its building and, as a result of its ownership of the property, has the primary duty to ensure that both the sidewalk and walkway are kept in good repair; but in the first instance, because of our present construction of the real estate exception, there would be **no** liability at all, while in the second, the Borough would be primarily liable, the same as any private property owner would be. Based upon our reading of the exceptions to governmental immunity, as well as the common-law theories of liability which they represent, we cannot conclude that the General Assembly intended to decree such a disparate result: We cannot believe that the General Assembly intended to impose liability on a local agency for an injury which occurred on a walkway to one of the agency's buildings, but not when that plaintiff is injured on a sidewalk adjacent to that building, yet likewise owned by it.

Consider further the hypothetical where Media's Borough Hall abuts one of its own streets and the plaintiff injures herself when she falls because of a defective sidewalk; the result would be even more disparate, perhaps even bizarre, because that local agency would not be primarily liable under the real estate exception, but would be secondarily liable because it owned the

street. Theoretically, then, in such a situation, a local municipality would have recourse against *itself* under principles already articulated *infra* and explained so thoroughly by the Supreme Court in *Builders Supply*. Furthermore, what if the local agency would be a school district or a local authority, neither of which, of course, owns any street or public roadway? In that instance, assuming negligence, of course, the local agency or school district would always be primarily liable for injuries occurring on other parts of its real estate, but would never be liable for injuries occurring on its sidewalks.

What arises from the above discussion is that we are confronted with a disparity in the liability for injuries which occur on sidewalks adjacent to **some** public property, but not **all** public property; *i.e.,* a disparity between Commonwealth sidewalk liability and local agency sidewalk liability, complicated by requiring a decision as to which entity, the local agency or the Commonwealth owns not only the street (cartway) but the right-of-way. This anomaly has arisen, in part, as a result of the language employed in our construction of the exceptions to governmental immunity. The question remains, then, how to reconcile this lacuna in the coverage of the exceptions. In *White,* we attempted to "fill-in" the gap by imposing secondary liability on the City because the Commonwealth, although it took over the street at issue, was responsible only for the maintenance of the roadway surface, and the City remained responsible for the upkeep of the sidewalk on which White was injured. Despite the fact that the sidewalk was not within the right-of-way of a street owned by the City, the *White* decision concluded that the City must be responsible for the sidewalk, not because the sidewalk was part of the City's realty, but because the Commonwealth did not take over all of the right-of-way encompassing the sidewalk, just the road surface. Although we agree with the ultimate outcome in *White,* reversing the grant of summary judgment, and agree with its acknowledgment that a

"gap in coverage" exists in the interpretation of governmental immunity, the Court now eschews the rationale used in *White* to reach that result.

We note that the holding in *White* would effectively create a rule of law applicable only to cities of the first and second class, whereby only those cities would be liable for injuries occurring on sidewalks adjacent to their own property which abuts state-owned streets. In *White,* Judge Smith correctly pointed out that when the Commonwealth takes over a road, pursuant to Section 542 of the State Highway Act, the Commonwealth merely takes over the road surface itself, not any corresponding duty or liability for maintenance of the sidewalks. However, as Judge Smith further noted, that section merely applies to cities of the first and second class and does not apply to other municipal governments. The provisions applicable to other local agencies, such as Townships and Boroughs, identify the Commonwealth as the party responsible for the maintenance of the sidewalks abutting state-owned highways. *See White,* 712 A.2d at 349 n. 2.

Indeed our research has revealed that, when the Commonwealth takes over local government roads in other areas, it takes over the **entire** right-of-way, not merely the road surface. *See* Act of December 18, 1994, P.L. 172. Accordingly, the holding in *White* would lead to confusion and disparity in situations where the local government has made different arrangements with the Commonwealth. Indeed, in Pennsylvania, there are over 50 third-class cities and hundreds of boroughs, townships, home-rule charter communities and other local agencies to which *White* would not apply. Although we agree that this Court's judicial responsibility of statutory interpretation needs to "fill in the gaps," *White* created an untenable distinction resulting in a limited, localized construction of a statute that clearly is intended to have statewide application.

■ Accordingly, rather than laboring through an analysis as to the true definition of what constitutes a "street," *see Gray,* 654 A.2d at 114 (Pellegrini, J., dissenting), we believe that the more appropriate solution to the problem is to make a key acknowledgment at the starting point of the analysis—that is, that the General Assembly, when it was drafting the exceptions to governmental immunity, did not envision nor consider the situation where the local agency *owns* the property adjacent to the sidewalk on which the injury occurs and the Commonwealth owns the street abutting that sidewalk. Accordingly, we now hold that Section 8542(b)(3), the real property exception, must be read as intending to exclude from the definition of real property, sidewalks, **except where those sidewalks are part of the real property owned by the local agency.**

Although we acknowledge that this analysis clearly sets up an "exception" to an exception in governmental immunity, thereby obliterating a distinction between sidewalks owned by a local government and those owned by private citizens, such an analysis is clearly reasonable and reaches a sensible result. If the local government owns the property adjacent to the sidewalk, its liability is primary, like that of the Commonwealth or any other private landowner. If however, the local government does not own the property, its liability is merely secondary as the result of its common-law obligation, and Section 8542(b)(7), to keep the sidewalks which abut its streets in good repair. In such an instance, liability would be imposed under the sidewalk exception as it has been in *Gray* and the cases preceding it.

■ If we acknowledge that the General Assembly did not envision the present factual situation, *primary* liability would be properly imposed on the City in this case, not under the sidewalk exception, but under the real estate exception by virtue of the City's ownership of the Fire Administration Building and the sidewalk adjacent thereto. In essence, we read the General Assembly's exclusion of sidewalks from the definition of real property in the real estate exception to exclude only those sidewalks which the local agency is not primarily responsible for maintaining, *i.e.,* sidewalks which are adjacent to property owned by others. Therefore, the real property exception to governmental immunity can, and indeed should, be read and applied the same as the real estate exception to sovereign immunity, *i.e.,* primary liability imposed when the Commonwealth or the local agency owns the real estate which *directly causes* a plaintiff's injury. *Crowell v. City of Philadelphia,* 531 Pa. 400, 613 A.2d 1178 (1992); *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987). Moreover, it seems illogical to us that the General Assembly would provide an exception from the Commonwealth's sovereign immunity for a failure to maintain its sidewalks, but not provide an identical exception to a local agency's immunity for an identical failure.

■ Turning now to the present case, it is undisputed that the City owns the Fire Administration Building, as well as the sidewalk, which is part of its real estate. Applying the rationale which we now have established, we must conclude that Sherman has pled a cause of action which fits into one of the exceptions to governmental immunity: She has averred that she was injured on the City's property, *i.e.,* the sidewalk in front of the administration building, the maintenance for which the City is primarily responsible. Accordingly, although Common Pleas correctly concluded that the City was immune from liability under the sidewalk exception, we conclude that, under the real property exception, it would not be immune from suit. On that basis, therefore, we must reverse the judgment of Common Pleas and remand the case for further proceedings and trial.

### ORDER

NOW, January 31, 2000, the order of the Court of Common Pleas of Philadelphia

County in the above-captioned matter is reversed to the extent that Common Pleas dismissed the cause of action against the City, and this case is remanded for further proceedings and trial.

Jurisdiction relinquished.

SMITH, Judge, concurring and dissenting.

I concur in the result reached by the majority to reverse the grant of summary judgment in favor of the City of Philadelphia and to return this matter to the trial court for further proceedings and trial. I must dissent, however, from the majority's reasoning for reaching that result. As this Court explained in *White v. City of Philadelphia*, 712 A.2d 345 (Pa.Cmwlth.1998), the correct approach in cases where the Commonwealth's having designated a road as a State highway is said to conflict with the "sidewalk exception" to local agency immunity contained in Section 8542(b)(7) of the Judicial Code, 42 Pa.C.S. § 8542(b)(7), is to examine closely the statutory provisions relating to such designation in order to determine what the legislature intended by it. I disagree with both major premises upon which the majority relies: first, that the designation of the street involved here as a State highway means that the Commonwealth "owns" the street, and therefore the sidewalk exception to local agency immunity does not apply, and second, that the sidewalk exception imposes only secondary liability upon a municipality.

The act of designation as a State highway is provided for by statutes, and it has only the legal effect expressed in the statutes. Nevertheless, beginning with *Pritchard v. City of Pottsville*, 113 Pa. Cmwlth. 38, 536 A.2d 844 (1988), this Court simply assumed, with no discussion or analysis of the relevant statutes, that when a road was designated as a State highway, a sidewalk alongside it could not fall within the meaning of "sidewalks with-

in rights-of-way of streets owned by the local agency" in Section 8542(b)(7). Cases cited by the majority routinely reaffirmed this interpretation, and in some, such as *Gray v. Logue*, 654 A.2d 109 (Pa.Cmwlth. 1995), the question of whether designation as a State highway equated with "ownership" by the Commonwealth was not even contested. Various provisions of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§ 670–101 to –1102, clearly show however that the legislature never intended the act of designation as a State highway to constitute the assumption of "ownership" of the designated street to the exclusion of the ownership of the City.

Section 102(1) of the State Highway Law, 36 P.S. § 670–102(1), provides:

State highway shall mean and include all roads and highways taken over by the Commonwealth as State highways under the provisions of any act of Assembly. Unless clearly so intended, the term shall not include any street in any city, borough or incorporated town, even though the same may have been taken over as a State highway.

Section 541, 36 P.S. § 670–541, relating to restrictions and limitations upon powers and obligations of the State, provides that the designation or taking over of any street in any city of the first or second class is not intended and shall not be construed: "(2) To place upon the department any authority to regulate traffic, parking or the general use by the traveling public of the streets, or sections thereof, *taken over by the Commonwealth for maintenance or improvement under the provisions of any act of Assembly....*" (Emphasis added.) The emphasized phrase encapsulates the limited purpose of designation.

Section 542, 36 P.S. § 670–542, as initially enacted [1] provided that after the streets

---

**1.** Replacing former Section 5 of the Act of May 7, 1937, P.L. 589, *as amended, formerly*

36 P.S. § 961–5, repealed by Section 1101 of the State Highway Law, 36 P.S. § 670–1101.

designated as State highways were taken over by the Commonwealth, they should be maintained, constructed, reconstructed, resurfaced and repaired at the expense of the Commonwealth: "Provided, however, That nothing in this section shall be construed to place upon the Commonwealth any obligation to repair and maintain the curbing and footways of any such street, or to remove snow or keep streets clean." This language remains intact in the current version of Section 542, after amendments in 1965 and 1970.

Where the legislature wished to provide for the Commonwealth's taking of an interest in land in the State Highway Law, it did so expressly and precisely. Section 413, 36 P.S. § 670–413, relating to acquisition of land for unobstructed view, provides:

> The department may acquire, by purchase or by the right of eminent domain, a free and unobstructed view down and across such lands located at or near the intersection of any two highways, or a highway and a railroad or railway, or at any curve in any highway, as may be necessary to assure a free and unobstructed view in all directions at such crossings....

> Upon any such condemnation, the secretary shall file with the recorder of deeds of the proper county a plan showing the property condemned....

> The proceedings for the condemnation of such view over and across such lands, and for the assessment of damages for property taken, injured or destroyed, shall be taken in the same manner as provided for the condemnation of land by the department for road purposes.

> [Following condemnation of a view,] the owner of such lands may make every

such use thereof as will not interfere with a free and unobstructed view....

Thus acquisition of even the partial interest of a view over land is required to be accomplished through purchase or condemnation and to be recorded with the recorder of deeds. In contrast, "designation" of a road as a State road is accomplished by act of the legislature and is not treated in the State Highway Law as the acquisition of an interest in land.[2]

The State Highway Law did provide for responsibility of the Commonwealth to maintain sidewalks in one specifically defined and limited circumstance in Section 416, 36 P.S. § 670–416:

> Whenever it shall appear that any part or portion of a State highway *in any township* is dangerous to the traveling public, and such danger could be materially reduced or lessened by the construction of a sidewalk, the department may aid the local authorities to lay out and construct a sidewalk along such dangerous portion of State highway.... *All sidewalks constructed under the provisions of this section shall be thereafter considered as a part of the State highway system, and shall be reconstructed, maintained and repaired, by the department, and the cost or proportion thereof agreed to be paid by the department shall be paid in the same manner as provided in this act in the case of State highways.* (Emphasis added.)

In *City of Philadelphia v. Friends Asylum for the Insane*, 46 Pa. D. & C. 251 (1942), the City had filed a lien against private property for the use of a contractor who had constructed a sidewalk in front of the property along Roosevelt Boulevard. The trial court stated that the defendant private property owner could take no comfort from the Act of May 7, 1937, P.L. 589,

---

**2.** Although the Secretary was given the power, with the approval of the Governor, to establish the ultimate width and lines of any State highway for future construction by means of a plan recorded with the recorder of deeds, this power could be exercised "before or after the construction, reconstruction or improvement" of the State highway. Section 206 of the State Highway Law, 36 P.S. § 670–206. Such a plan is not a recording of the act of designation as a State highway, which necessarily precedes the development of any such plan.

*as amended* by the Act of July 10, 1941, P.L. 345, under which certain streets in the City were taken over by the Commonwealth. Although under those Acts the streets were to be maintained by the Department of Highways at the expense of the Commonwealth, "there is a proviso that there not be placed upon the Commonwealth any obligation to repair and maintain the curbing and footways. Therefore, we conclude that the duty of maintaining and repairing curbs and footways remains with the owners of the abutting property." *Friends Asylum* at 254. The trial court's reference was to the provisions of former Section 5 of the Act of May 7, 1937, P.L. 589, which was the predecessor in part to Section 542 of the State Highway Law. *See* n1 above.

Thus from the time of the earliest enactment and interpretation of relevant provisions of the State Highway Law and their predecessors, the legislative intent was clear that the act of designation and taking over of a road as a State highway imposed certain enumerated responsibilities upon the Commonwealth in regard to maintenance and improvement. Nothing in the State Highway Law indicated, however, that the act of designation constituted acquiring any form of interest in the "ownership" of the road that was designated. Section 413 affirmatively indicates to the contrary under the maxim *expressio unius est exclusio alterius*.

Both the general provisions of the State Highway Law and those specifically applicable to cities of the first class show that there never was any conflict between the State Highway Law and the grant of an exception to governmental immunity in Section 8542(b)(7) for "a dangerous condition of sidewalks within the rights-of-way of streets owned by the local agency." A street that was owned by the City of Phila-

delphia continued to be owned by the City after it was designated as a State highway.

I disagree also with the majority's ultimate conclusions regarding Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3), and Section 8542(b)(7), the real property and sidewalk exceptions to local agency immunity respectively. Section 8542(b)(3), in defining the real property exception, could not be clearer in excluding sidewalks from that definition. There can be no dispute that the reason for this exclusion is that liability relating to sidewalks is dealt with separately in Section 8542(b)(7). I agree with the majority that the Commonwealth's liability relating to sidewalks is handled in Section 8522(b)(4) of the Judicial Code, 42 Pa.C.S. § 8522(b)(4), where it is included with Commonwealth real estate and highways. I agree further that the sovereign immunity provision contemplates only primary liability. The different treatment in the two provisions, however, simply reflects the fact that the Commonwealth does not own and operate municipalities. The Commonwealth owns parcels of land, many of which have sidewalks, and the legislature has determined that it should be liable for injuries caused by a dangerous condition of those sidewalks in the same manner as for the rest of its real property.[3]

In municipalities such as the City, on the other hand, sidewalks run by both land owned by the municipality and land owned by others. As the majority explains, such other owners typically are charged by ordinance with the primary responsibility to keep their sidewalks in good repair, while the municipality has the distinct duty to ensure that they do so. However, the fact that the Commonwealth's liability is solely primary and that a municipality's may be secondary simply does not lead to a conclusion that a municipality's liability may never be primary. Contrary to the majority's

**3.** *See* Joint State Government Commission, General Assembly of the Commonwealth of Pennsylvania, Sovereign Immunity 13 (1978), concerning the exception to immunity for Commonwealth real estate, highways and

sidewalks: "As to real property generally, this area of waiver is intended to impose liability as it would exist if the owner or lessee were a private person."

position, I believe that there is no question that a municipality is primarily liable for injuries caused by dangerous conditions of sidewalks abutting its own property. The last sentence of Section 8542(b)(7) recognizes the different responsibilities of a municipality and renders it secondarily liable only where some other party is primarily liable.

The Supreme Court in *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995), to which the majority refers, held that Section 8542(b)(7) applied to determine the liability of the City where a plaintiff alleged that she was injured when she fell on an accumulation of grease on a sidewalk in front of a City-owned building. Although the Supreme Court ultimately concluded that the claim was not within the meaning of the phrase "dangerous condition *of* sidewalks" (emphasis added) as strictly construed, *Finn* holds, as do many other cases, that the City may be held primarily liable where an injury is shown to be caused by a dangerous condition of a sidewalk along property owned by the City.

Finally, I note that the majority's discussion of the holding in *White v. City of Philadelphia* is not correct. The holding there was not that the Commonwealth had somehow acquired ownership of the cartway of the street next to the sidewalk where the injury occurred but not of the sidewalk itself. Rather, based upon an analysis of the relevant statutes as discussed above, the holding was that the designation of the street involved there as a State highway did not mean that the Commonwealth had acquired "ownership" at all, and therefore it did not remove the sidewalk from the ambit of "sidewalks within the rights-of-way of streets owned by the local agency" in Section 8542(b)(7). In my view, the resolution of the present case is straightforward under the principles set forth in *White*. It may be accomplished by application of the clearly relevant provisions of the State Highway Law and the sidewalk exception to local agency immunity and without the majority's conceded violence to the plain meaning of Section 8542(b)(3) and its unconceded violence to Section 8542(b)(7).

FLAHERTY, Judge, dissenting.

I regretfully dissent. While the majority's method of resolving this case has the allure of achieving perhaps the most reasonable result, because I am a judge and not a legislator, I cannot join the majority's opinion. As a judge I am bound by the clear unambiguous language enacted by the legislature and compelled to dissent. What is at stake here is a more crucial principle—the proper role of courts in our democracy in giving effect to the language duly enacted by the legislature.

In the Statutory Construction Act of 1972, the legislature has statutorily mandated to the courts of this Commonwealth what principles of construction the courts are to utilize in interpreting the statutes on which it works so hard to cover every conceivable situation.[1] Thus, we have been instructed that the

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible to give effect to all of its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering among other matters:

. . . .

1 Pa.C.S. § 1921. The legislature further instructs us that "[w]ords and phrases

---

1. As the Governmental Immunity Act was a statute finally enacted after September 1, 1937 and does not provide otherwise, the Statutory Construction Act applies to it. 1 Pa.C.S. § 1502.

shall be construed according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning." 1 Pa.C.S. § 1903(a). Although ostensibly engaged in construing the Governmental Immunity Act, inexplicably, nowhere in its entire opinion does the majority even once reference these fundamental principles of construction.

Application of these principles requires that we find the City not liable as the sidewalk at issue herein was not within the right of way of a street owned by the City. Indeed the majority candidly acknowledges as much: "[f]rom even a cursory review of these statutory exceptions to governmental immunity, it is readily apparent, first, that any strict reading of Section 8542(b)(7) would preclude Sherman from recovering for her injuries because the sidewalk on which she fell was not within the right-of-way of a street owned by the City...." Majority op. at 97. Perhaps this is why in the majority's opinion, not one reference is made to these dispositive principles as they apply to this case. Because the text of the statute clearly precludes recovery here and the majority concedes as much, I dissent to the majority's reversal of the trial court's order.

Essentially, the majority reasons that because the sidewalk at issue herein abuts property owned by the City, it constitutes "real property" in the possession of the local agency and thus falls within the real estate exception to the Governmental Immunity Act. The majority concludes so notwithstanding that the legislature specifically defined "real property" as used in this exception to exclude "sidewalks." Thus, we have the majority concluding that the real property exception applies to the sidewalk herein which is directly contradictory

to the legislature's clear and unambiguous definition of real property which excludes sidewalks.[2]

Rather than give effect to the legislature's clear and unambiguous language as courts are bound to do, the majority seeks to remedy what it perceives to be a lacuna or gap in the legislative scheme of immunity due to the legislature's alleged failure to contemplate the situation where the City owns the real property abutting a sidewalk but not the cartway which also abuts the sidewalk. The text of the statute, however, does provide for this situation. In no uncertain terms the text of the statute prohibits liability and the majority so concedes. Majority op. at 97.

The majority severs its analysis from the text of the statute in favor of an analysis which "reaches a sensible result." Majority op. at 105. Thus, severed from the anchor of the text, the majority's analysis is cast adrift into the murky and unpredictable seas of its own surmise regarding what must have been the legislature's intent, forgetting that the "intent of the legislature should be gathered from the language of the statute **alone** where such language is clear and unambiguous" as it concededly is here. *F.W. Woolworth Co. v. City of Pittsburgh*, 2 Pa.Cmwlth. 338, 284 A.2d 143, 146 (1971)(emphasis added).

Even if one agrees with the majority's surmise that the General Assembly, "when it was drafting the exceptions to governmental immunity, did not envision nor consider the situation where the local agency *owns* the property adjacent to the sidewalk on which the injury occurs and the Commonwealth owns the street abutting the sidewalk", Majority op. at 105, it does not follow that the solution is for this court by judicial fiat to engraft language onto the legislature's definition of real property where the engrafted language runs directly contrary to the express words. *Latella v. Com., Unemployment Compensation*

---

**2.** I find it ironic that the majority takes to task the panel in *White v. City of Philadelphia*, 712 A.2d 345 (Pa.Cmwlth.1998) for ignoring the "plain language of the sidewalk exception" while engaging in the same behavior. See Majority op. at p. 102 n. 5.

*Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983)(a court cannot supply an apparent omission in a statute even though it appears that the omission resulted from the legislature's failure to foresee or contemplate a case in question). Rather, the solution is to give effect to the clear and unambiguous language, point out the anomalies, and urge the legislature to resolve the problem by enacting proper amendments to the statute.

Because the majority ignores the applicable principles of construction, and fails to give effect to what is concededly the plain meaning of the text of the statute and instead engages in legislation by judicial fiat, I must dissent.

LEADBETTER, Judge, dissenting.

I must respectfully dissent. Although I do not disagree with the majority's thorough and well-stated analysis, I simply do not believe that it is our function to rewrite a statute which is clear on its face because we believe the legislature has made a mistake. It is the General Assembly's prerogative to write our statutory laws, and if one is inartfully drafted, it is the General Assembly's prerogative to amend it or leave it alone.

I would affirm the Court of Common Pleas in this case, overrule *White v. City of Philadelphia,* 712 A.2d 345 (Pa.Cmwlth. 1998) and leave it to the legislature to "fill in" "gaps" in the laws setting forth the exceptions to local government immunity.

Judge KELLEY joins in this dissenting opinion.