**Joseph REID and Sarah Reid**

v.

**CITY OF PHILADELPHIA, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.
Decided Aug. 3, 2006.

Alan C. Ostrow, Philadelphia, for appellant.

Gerald W. Spivack, Philadelphia, for appellees.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

The City of Philadelphia appeals an order of the Court of Common Pleas of Philadelphia County that denied the City's motion for post-trial relief. Joseph and Sarah Reid had filed a negligence action against the City that alleged that the City had failed properly to remove snow and ice from a City sidewalk located next to the City's 39th Police District building, and that Joseph Reid had slipped and fallen on the sidewalk because of the City's alleged negligence. In its responsive pleading to

the complaint, the City raised governmental immunity as an affirmative defense. The parties agreed that the amount of damages from the accident was $100,000, and they also agreed to have a non-jury trial on the issue of liability.

The trial court heard evidence of the condition of the sidewalk and of the circumstances surrounding Reid's fall. Following the trial, the City moved for nonsuit, which the trial court denied. The trial court found the City negligent, but also concluded that Reid was 25% responsible for his injuries, and accordingly, the trial court awarded Reid only 75% of the damages or $75,000.

The pertinent facts, as found by the trial court, are as follows. The City of Philadelphia maintains its 39th Police District Station. The City owns this property and the adjacent sidewalk on which Mr. Reid fell and which is located at 2200 Yelland Street. The City has a duty to "inspect, maintain, repair, upkeep and generally keep [its] sidewalk property free from unreasonably unsafe and hazardous conditions" in order for the sidewalks to be safe for pedestrian travel. City Ordinance Section 10–720 relates to snow removal and provides:

> The owner, agent and tenants of any building or premises shall clear a path of not less than 30 inches in width on all sidewalks abutting the building or premises within 6 hours after the snow has ceased to fall. The path shall be thoroughly cleared of snow and ice. . . .

The City also acknowledged that it employed a custodial worker who was responsible to clear snow and ice from the 39th Street Police Station sidewalk. The trial court noted that the City had erected a fence between the building and the sidewalk and that employees at the Station parked their cars on the sidewalk. In order to walk on the sidewalk, Mr. Reid had to walk within a tight space formed between the fence and the parked cars, and because of the cars, Mr. Reid could not see where he was walking. As Mrs. Reid recognized the condition of the sidewalk surface, she instructed her family to be careful, but Mr. Reid fell as she gave her warning.

The trial court believed Mr. Reid's description of the conditions and of his fall, of which he said and which the court quoted as follows:

> [I was] trying to walk down this ice and snow here. . . . But no sooner than later I was, I guess airborne. I was up in the air. I remember looking at the sky and coming down on my left ankle. I think I must have heard it snap before I hit the ground. So when I came down I was in excruciating pain.

The trial court accepted this testimony as credible, as well as Mr. Reid's statement that the snow and ice caused him to fall. The condition of the sidewalk as described by Mr. Reid was confirmed by several other witnesses including City paramedics who attended to Mr. Reid. One of the paramedics testified that the area in which Mr. Reid fell was "crunchy" from the snow. Mr. Tottan, the City custodial employee who was responsible for clearing the sidewalk, also stated that the sidewalks were snowy and icy when he left his shift at three in the afternoon the day Mr. Reid fell. He testified that he did not remove the ice because the ice was too thick to remove without a special ice pick; instead, Mr. Tottan used rock salt on the sidewalk in order to provide pedestrians improved footing. Based upon the testimony of these witnesses, the trial court determined that the snow and ice on the sidewalk had accumulated in ridges and elevations of such a character as to unreasonably obstruct pedestrian travel.

The trial court found that the City had violated its snow removal ordinance and that the City had notice of the condition by virtue of Mr. Tottan's own testimony. Based upon these facts, the trial court concluded that the City had been negligent.

The trial court also determined that the City's knowledge of and acquiescence to the Station employees' practice of parking on the sidewalk compounded an already dangerous condition. By parking on the sidewalk, the cars forced Mr. Reid to walk on a very narrow and dangerous portion of the sidewalk. The cars made visibility even worse than it would have been if the sidewalk had been free of vehicles. The trial court concluded that the City had also been negligent in allowing its employees to park their cars on the sidewalk.

The trial judge, the Honorable Lisa M. Rau of the Philadelphia Court of Common Pleas, rendered an exemplary analysis of governmental immunity and those instances in which the General Assembly has deemed municipalities to have waived such immunity. The trial court concluded that the City had failed to make its sidewalk safe for pedestrian travel and that the City's conduct resulted in a waiver of immunity under the real estate exception to governmental immunity. Section 8542(b)(3) of the Judicial Code, 42 Pa.C.S. § 8542(b)(3).

The City argues that the trial court erred in concluding that the City had waived immunity under the real property exception to immunity found in Section 8542(b)(3). The Judicial Code provides for exceptions to the general grant of governmental immunity only in limited circumstances, and provides as follows in pertinent part:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person ... within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).

. . . .

(b) Acts which may impose liability.— The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

. . . .

(3) *Care, custody or control of real property.*—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of . any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. As used in this paragraph, "real property" shall not include:

. . . .

(iv) sidewalks.

. . . .

(7) *Sidewalks.*—A dangerous condition of sidewalks within the right-of-way of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient

time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control of other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

The trial court, relying upon the reasoning in this Court's decision in *Sherman v. City of Philadelphia*, 745 A.2d 95 (Pa. Cmwlth.2000), and the Supreme Court's analysis in *Walker v. Eleby*, 577 Pa. 104, 842 A.2d 389 (2004), concluded that the condition of the sidewalk triggered the real estate exception to governmental immunity. Sherman is significant for its conclusion that, despite the clear language of the real property immunity waiver——and particularly that section's exclusion of liability with regard to sidewalks——a municipality can be primarily liable for injuries resulting from the municipality's negligence as to the condition of its sidewalks that adjoin the municipality's real property. The trial court opined that, although *Sherman* constituted a plurality decision, the judges joining the decision of the Court, combined with Judge Smith–Ribner's concurring decision, did reach a consensus as to the primary liability of a municipality for a dangerous condition of its sidewalks when the sidewalk adjoins real property owned by the municipality, whether that primary liability arises by virtue of the municipality's ownership of the real property adjacent to the sidewalk (*Sherman*), or under the sidewalk exception (*Sherman* concurrence; *White v. City of Philadelphia*, 712 A.2d 345 (Pa.Cmwlth.1998)).

In Walker, the Supreme Court clarified the law regarding sidewalks that adjoin municipal streets. Before the Court decided that case, uncertainty existed as to the status of municipal streets that had been designated Commonwealth highways. Judge Smith–Ribner in *White* had noted that no court decisions had clearly concluded that municipalities lose their ownership interests in streets and roads merely because a street had been designated a Commonwealth highway. The Supreme Court, in deciding *Walker*, agreed with Judge Smith–Ribner's analysis in her concurring opinion in *Sherman* that a street owned by a municipality that is designated a Commonwealth highway continues to be owned by the municipality. Following *Walker*, it is clear that if a person is injured on a municipal sidewalk that adjoins a designated highway, the municipality remains the owner of the roadway (absent some other affirmative action on the part of the Commonwealth, such as eminent domain), and the sidewalk is within the "right-of-way" of a street owned by the municipality for the purposes of analyzing the issue of governmental immunity under Section 8542(b)(7). In such instances the sidewalk exception applies, and municipalities are secondarily liable. Thus, if this case simply involved a situation where the sidewalk at issue was adjacent to the City's right-of-way and to a private party's real property, the City would be secondarily liable for injuries that result from a dangerous condition of the sidewalk. In Walker the landowner remained primarily liable. In this case, in accord with the reasoning of the Sherman plurality, the City, being the owner of the real property would be primarily liable.

In *Walker* the Supreme Court did tacitly accept this Court's plurality conclusion in *Sherman* that, where a municipality is the owner of the real property that adjoins a sidewalk, the municipality can be held primarily liable under Section 8542(b)(3) as property owner for its failure to satisfy its obligation to make sidewalks safe for pe-

destrian travel. The Supreme Court stated in Walker that "[i]n this case, since the City did not own the premises at 5119 Chestnut Street, it could only be secondarily liable." 577 Pa. at 108–9, 842 A.2d at 391. The conclusion we can draw from that statement is that, if the City had owned the premises at 5119 Chestnut Street, the Supreme Court would have concluded that the City had been primarily liable.

Based upon the Supreme Court's apparent approval of this Court's conclusion in *Sherman,* and upon the fact that *Sherman,* while not a true majority opinion contains majority approval of the holding that the City is primarily liable either under the real property exception or the sidewalk exception to immunity, we conclude that the trial court did not err in holding that the City could be held primarily liable for Mr. Reid's injuries under the real property exception to governmental immunity, as discussed by Judge Doyle in *Sherman.*

The City also argues that (1) the trial court erred in concluding that the "hills and ridges" doctrine applies because such a condition, not being one that is related to the design or construction of the property, is simply a condition on the sidewalk or property, and (2) Mr. Reid failed to satisfy his burden of proving that the condition of the sidewalk fell within the "hills and ridges" doctrine.

As noted above, Sherman was a plurality, with only three judges concluding that the real estate exception applied, and one judge concluding that the sidewalk exception applied. Nevertheless, we believe that the reasoning of the three-judge decision remains a proper interpretation of the immunity provisions, and therefore, despite the lack of a clear majority as to which provision applies, we believe that the broader language of the real property exception (providing for liability for negligent care, custody, or control) applies, rather than the more limited sidewalk exception, which provides for liability only when a plaintiff establishes a defect of (as compared to on) a sidewalk.

Before the Supreme Court decided *Grieff v. Reisinger,* 548 Pa. 13, 693 A.2d 195 (1997), the courts had followed the belief that the real property exception to governmental immunity, like the sidewalk exception, and the real property exception for sovereign immunity purposes, required a showing that the condition causing harm arose from a defect **of** the property, rather than from artificial substances on the property.

However, in *Grieff,* the Supreme Court departed from those earlier precedents and concluded that a municipality was not immune for injuries arising when a visitor to a fire station was burned when paint thinner used to clean the floor of the station ignited. The Court held that the fire chief's care of the fire association's property caused the fire that injured the visitor. In that case, the Court referred to its earlier decision in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), in which it had held that a municipality could not be held liable for injuries arising on a municipality's real property as a result of the actions of third parties. The Court noted that it had intended the result in *Mascaro* to apply only in such cases where injuries are the result of third parties.

Following its decision in *Grieff,* the Supreme Court reversed and remanded this Court's decision in *Hanna v. West Shore School District,* 679 A.2d 312 (Pa.Cmwlth. 1996), *reversed,* 548 Pa. 478, 698 A.2d 61 (1997). In *Hanna,* a woman visiting a school for the purpose of a parent-teacher conference slipped and fell in a puddle of water on the school's corridor and sued for injuries that resulted from the fall. In

following the Supreme Court's direction to reconsider the decision in light of *Grieff,* this Court reversed the trial court's grant of summary judgment in favor of the school district, and remanded the case for trial, concluding that the plaintiff had pleaded a cause of action that survived the school district's claim that the puddle, not being a condition of the real property, did not result in a waiver of immunity. *Hanna v. West Shore School District,* 717 A.2d 626 (Pa.Cmwlth.1998). Rather, the pleadings showed that the district had failed to exercise the proper care, custody, or control over the real property.

As the trial court pointed out, the Supreme Court in *Kilgore v. City of Philadelphia,* 553 Pa. 22, 717 A.2d 514 (1998) (which involved an accumulation of snow and ice on a roadway), held that the City could be held liable under the real property exception for such a condition on a roadway located at City-owned Philadelphia International Airport. Based upon these decisions, we conclude that the trial court in this case correctly concluded that the City had failed in its duty with regard to the care of its sidewalk adjoining the police station.

■■■■■ The City also argues that the trial court erred in concluding that the ice and snow had accumulated in hills and ridges. To establish that a property owner has acted negligently in failing to remove an accumulation of snow or ice on his property, a plaintiff must prove:

(1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians traveling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused the plaintiff to fall.

Absent proof of all such facts, plaintiff has no basis for recovery.
*Rinaldi v. Levine,* 406 Pa. 74, 78–9, 176 A.2d 623, 625–6 (1962). While the Supreme Court has recognized situations in which the hills and ridges doctrine does not apply, such as when the neighboring area has not had generally slippery conditions or where some artificial defect has created a localized area of ice (such as where a drain pipe has broken), neither party has claimed that any exception to the hills and ridges doctrine applies.

The Court stated in *Rinaldi* that a plaintiff bears a burden to show more than a simple uneven walkway surface created by pedestrians treading on a snowy and icy surface. Plaintiffs must establish that the accumulation caused ridges or "other elevation" of such a size and character as to obstruct travel. In *Rinaldi* the Supreme Court concluded that the plaintiff had failed to sustain his burden of proof as to the nature of the snow and ice accumulation. The Court found fatal Rinaldi's failure to offer evidence of the size or character of the ridges or elevation he claimed caused his fall.

The City argues that Mr. Reid presented insufficient evidence to establish that the City had allowed the ice and snow to form hills and ridges. The trial court relied upon the testimony of Mr. Reid, the paramedic who attended to Mr. Reid, and Mr. Tottan, the City's employee. Mr. Tottan admitted that the character of the accumulation was of such a character as to require the use of a pick. He admitted he had been given a pick, but that he could not locate it. Instead, he spread rock salt. Mr. Reid and other witnesses did testify regarding the general conditions of the sidewalk. The photographs plaintiff submitted support the trial court's determination that hills and ridges existed on the sidewalk. The trial court was correct in

stating that the City's claims that there was insufficient evidence to describe the character of the hills and ridges went to the weight rather than the sufficiency of the evidence. The City has not alleged that the trial court erred in admitting the photographs into evidence. They do show elevations in surface. The trial court did not exceed its fact-finding powers in determining that the photographs supported the conclusion that the area upon which Mr. Reid fell had hills and ridges. The trial court had a different evaluation of the evidentiary value of the pictures, and this Court will not disturb the trial court's decision to place greater weight on the photographs on review.

Based upon the foregoing, the trial court's order is affirmed.

Judge PELLEGRINI concurs in result only.

### ORDER

AND NOW, this 3rd day of August 2006, the order of the trial court is affirmed.